No. 44,607

W. O. WILLIAMS, County Clerk of Sedgwick County, Kansas, and ROBERT H. SAFT, County Superintendent of Public Instruction, Sedgwick County, Kansas, *Appellees*, v. THE BOARD OF EDUCATION OF THE CITY OF WICHITA OF THE STATE OF KANSAS, Substitute or Successor Defendant: THE BOARD OF EDUCATION OF AND UNIFIED SCHOOL DISTRICT No. 259 (Wichita), Sedgwick County, Kansas, *Appellant;*

RURAL HIGH SCHOOL DISTRICT No. 191, Sedgwick County, Kansas; and COMMON SCHOOL DISTRICT No. 186, Sedgwick County, Kansas, Substitute or Successor Defendants: THE BOARD OF EDUCATION OF AND UNIFIED SCHOOL DISTRICT No. 261 (Haysville), Sedgwick County, Kansas, *Appellees.*

(422 P. 2d 874)

Opinion filed January 21, 1967.

*J. Ashford Manka,* of Wichita, argued the cause, and *Mark H. Adams, Charles E. Jones, Wm. I. Robinson, Clifford L. Malone, Mark H. Adams, II, John S. Seeber, Floyd E. Jensen, Philip L. Bowman, Robert Hall,* and *Joe Rolston,* all of Wichita, were with him on the brief for the appellant.

*Charles C. McCarter,* of Wichita, argued the cause, and *Kent Frizzell, Carl L. Wettig* and *James R. Schmitt,* of Wichita, were with him on the brief for the appellees, Rural High School District No. 191, Sedgwick County, Kansas, and Common School District No. 186, Sedgwick County, Kansas, and their successor, The Board of Education of and Unified School District No. 261 (Haysville), Sedgwick County, Kansas.

No appearance for appellees W. O. Williams and Robert H. Saft.

The opinion of the court was delivered by

O'CONNOR, J.: This case involves the adjustment of property

rights and claims, under K. S. A. 72-5316a, *et seq.*, between the boards of school districts affected by the City of Wichita's annexing parts of territory lying within the boundaries of adjacent school districts.

The parties on appeal are the Board of Education of the City of Wichita (School District No. 1), hereafter referred to as appellant, and the boards of adjacent school districts, Campus High School District (Rural High School District No. 191) and Oatville Common School District (Common School District No. 186), hereafter referred to as appellees. While these proceedings were in progress, the Wichita district became Unified School District No. 259 (Wichita) and Campus and Oatville districts became a part of Unified School District No. 261 (Haysville) under applicable school unification laws effective July 1, 1965.

The City of Wichita, during the years 1959 through 1964, annexed areas south and west of the city that embraced part of the territory lying within the boundaries of the Campus and Oatville districts. From these series of annexations this case resulted. The issues here concern the years 1962, 1963 and 1964, during which time the city annexed territory from the Campus district containing tangible taxable property assessed at $9,671,669, and from the Oatville district in 1962 and 1963 assessed at $400,000. There was no annexation of territory from the Oatville district in 1964.

None of the foregoing annexations included school buildings, furnishings or property belonging to the Campus and Oatville boards. Said school properties being located in the territory not annexed, the adjacent district boards were obligated, under the provisions of K. S. A. 72-5316c, to assume payment of the unpaid bonded indebtedness incurred prior to the annexation. The net bonded indebtedness, as adjusted, for the two adjacent districts for each of the pertinent years, was:

| District | 1962 | 1963 | 1964 |
|---|---|---|---|
| Campus | $5,223,223.85 | $4,892,746.28 | $4,395,232.31 |
| Oatville | 111,640.69 | 80,376.54 | — 0 — |

An agreement concerning the adjustment of property rights and claims between the appellant and the appellees was attempted pursuant to K. S. A. 72-5316d, but to no avail. As a result, these proceedings were instituted by the county superintendent on August 23, 1963, in accordance with the provisions of K. S. A. 72-5316e. The parties again attempted to agree upon an adjustment

of their claims but failed to make any substantial progress. The court then appointed three commissioners on May 20, 1964, and instructed them regarding their duties. The commissioners filed their report on June 25, 1965. After a lengthy hearing on the report, the court made certain modifications, not now in dispute, and entered judgment effective July 20, 1965, against the Board of Education of the City of Wichita, and in favor of the Campus and Oatville boards in the amounts of $1,083,121.68 and $889.64, respectively, said sums to be payable without interest, in accordance with the provisions of K. S. A. 72-5316f. Court costs, including commissioners' fees, were ordered paid, one-half by the Wichita board and one-half by the Campus board. The Wichita board has appealed from the judgment, having first filed a motion for new trial, which motion, after hearing, was overruled.

The right of either party to appeal to this court from a judgment rendered by the district court under K. S. A. 72-5316e is of recent origin. Prior to the enactment of chapter 379, Laws of 1963, whereby an appeal was authorized, the decision of the district court was final. (*Community High School v. Board of Education,* 191 Kan. 684, 383 P. 2d 976; *Common School Dis't No. 86 v. Olathe School Dis't No. 16,* 186 Kan. 512, 351 P. 2d 193.) Thus, we are confronted with a case of first impression in which the basic issue presented involves the correctness of the adjustment formula applied by the commissioners and approved by the lower court in adjusting the property rights and claims between the parties.

The establishment or creation of school districts is a function legislative in character. Being creatures of the legislature, school districts are subject not only to its power to create but also to its power to modify or dissolve. (*Tecumseh School District v. Throckmorton,* 195 Kan. 144, 403 P. 2d 102.) Likewise, it is appropriate for the legislature to provide a comprehensive plan for the adjustment of the rights of school districts which are affected by a city's annexing a part of an adjacent school district's territory. This has been accomplished with the enactment of K. S. A. 72-5316a, *et seq.* Other school laws enacted by the legislature, which are not primarily designed to cope with the situation, are not persuasive in construing and applying the statutes with which we are here concerned. (*Board of Education of Haysville v. Board of Education of Wichita,* 194 Kan. 450, 399 P. 2d 539.)

A brief resumé of pertinent portions of the statutes will provide

the legislative framework for a better understanding of the issues presented in this appeal.

K. S. A. 72-5316b establishes the effective date of the annexation for school purposes, which here would be June 30 following the date of each annexation. The statute further provides that the taxable property of the territory annexed shall be subject to taxes levied, including levies for existing bonded indebtedness and interest, by the city board of education as of March 1 preceding such 30th day of June.

K. S. A. 72-5316c specifies which school board shall assume payment of the unpaid bonded indebtedness incurred by the adjacent district prior to the annexation in acquiring school property and in acquiring, constructing and furnishing the school buildings located within the *new* territorial limits. If, as in the instant case, such school property is not included in the territory annexed, the board of the adjacent district retains the obligation to pay the bonded indebtedness. (*Community High School v. Board of Education,* 188 Kan. 300, 362 P. 2d 58.)

K. S. A. 72-5316d provides that the respective districts may, by written agreement, and with the approval of the county superintendent, effectively adjust their claims, provide for disposition of the movable personal property, and ·determine the amount due from one board to the other. If such agreement is impossible, or is not approved by the county superintendent, proceedings may be instituted as outlined in K. S. A. 72-5316e. The latter statute, *inter alia,* directs that the court shall appoint and instruct three competent commissioners who shall make certain determinations, as hereafter enumerated. Upon approval by the court of the commissioners' report as originally filed, or as corrected, the court shall enter judgment for the amount found to be due from one board to the other.

K. S. A. 72-5316f outlines the method to be used for obtaining funds to pay any adjustment determined by agreement of the parties, or by the court in the event of disagreement. The county clerk is required to levy annually a tax of not to exceed two mills upon the taxable tangible property within the territory in the district from which the amount is due for as many years as may be necessary, and when said taxes are collected they are to be paid to the treasurer of the board to which payment is due. In lieu of such taxes the board from which the amount is due may pay such

amount at any time out of its general fund, if such payment has been provided for in its budget.

The appellant, by its various assignments of error, questions the correctness of the adjustment formula (K. S. A. 72-5316e) applied by the commissioners and approved by the court. The specific points raised will be referred to and considered in our subsequent discussion.

We believe the dispute between the parties regarding the formula and its application to the facts here may best be illustrated by comparing the formula used by the commissioners and adopted by the court with that urged by the appellant for the 1963 annexation involving the Campus district:

| *Statutory Requirements* (K. S. A. 72-5316e) | *Commrs. and Court* | *Wichita Board* |
|---|---|---|
| (1) Appraise and determine the fair value as of the effective date of the annexation for common-school or high-school purposes of all real and tangible personal property of the adjacent school district taking into account cost of reproduction less depreciation, original cost less depreciation, obsolescence, market value, and any other factors affecting fair value | $4,336,459.04 | $4,336,459.04 |
| (2) Determine the amount of all debts, including unpaid bonded indebtedness, of the adjacent school district as of the effective date of the annexation for school purposes | $4,892,746.28 (Includes future and unearned interest) | $3,640,000.00 (No future and unearned interest) |
| (3) Determine the net value of all assets of the adjacent school district by deducting the total of all items under (2) from the total of all items under (1) above | None | $696,459.04 |
| (4) Determine what school property, buildings and furnishings, if any, are located in the territory being annexed | None | None |
| (5) Determine the amount due from the board of education to the board of the adjacent school district or from the district board to the board of education, as the case may be, on the basis of the ratio of the assessed valuations on [Jan. 1] preceding the effective date of the annexation for school purposes of the tangible taxable property in the territory annexed and in the territory of the adjacent school district which is not annexed, taking into account the property retained by the adjacent school district and that acquired by the board of education and the bonded indebtedness assumed by either board | $635,078.47 * | $90,400.38 ** |
| Assessment Ratio: | | |
| Unannexed | $31,958,280.00 | 87.02% |
| Annexed | $4,769,068.00 | 12.98% |
| Total before | $36,727,348.00 | |

* Due Campus from Wichita 12.98 percent of $4,892,746.28 (Item 2).

** Due Wichita from Campus, 12.98 percent of $696,469.04 or the net equity value of real and tangible school property exclusively retained by Campus District (Item 1 minus Item 2).

The foregoing graphically demonstrates that the basic controversy in this case relates to the proper factor to which the assessment

ratio is to be applied. The appellant argues that such ratio should be applied to the difference between the fair value of the assets of the adjacent districts and their unpaid bonded indebtedness (excluding interest), in which case proper adjustments for the years in question would result in the Campus and Oatville boards being indebted to the Wichita board. Appellees, on the other hand, contend the commissioners and court properly applied the assessment ratio to the unpaid bonded indebtedness (including interest) of the adjacent districts, with the result that the Wichita board was indebted to the Campus and Oatville boards.

As an aid to the proper interpretation and application of K. S. A. 72-5316a, *et seq.*, initial enactments of the legislature dealing with the subject are enlightening. The earliest school legislation on city annexation and its effect on school districts is found in chapter 128, Laws of 1893. Section 2 thereof provided that when a part of the territory of an adjacent district was annexed to a first or second class city, it was the duty of the county superintendent, among other things, ". . . to *equitably apportion* the amount due the district board, or board of education, as the case may be. . . ." (Emphasis added.) While subsequent legislation has provided greater detail for making the adjustment in each individual case, the principle of equitable apportionment continues as a thread throughout the enactments. (See R. S. 1923, 72-5317 and 5318; G. S. 1949, 72-5317 and 5318; L. 1951, ch. 407; L. 1953, ch. 335; L. 1957, ch. 395.)

The concept of "equity" has been given judicial recognition in this and other jurisdictions, both before and after the passage of legislation dealing with school adjustment problems. (See *Board of Education v. State,* 64 Kan. 6, 67 Pac. 559; *Board of Education v. School Districts,* 45 Kan. 560, 26 Pac. 13. Also, see *Bd. of Ed. of Campbell Co. v. Bd. of Ed. of Newport,* 284 Ky. 774, 146 S. W. 2d 30; *State, ex rel., v. Board of Education,* 65 Ohio App. 273, 29 N. E. 2d 878; *State, ex rel., v. Bateman,* 119 Ohio St. 475, 164 N. E. 516.)

The principle of equity relied on by this court and the legislature, when speaking on the subject, may be stated in the following manner: The rights and claims of the school districts affected by an extension of city boundaries are to be adjusted in such a manner that the districts are in substantially the same economic position after annexation as before annexation. Behind the provisions of K. S. A. 72-5316d and K. S. A. 72-5316e lies legislative recognition

that after a city has annexed territory (taxable property) of an adjacent school district which has outstanding bonded indebtedness, and has or has not annexed school property of the adjacent district, there is an economic imbalance between the two school districts that must be adjusted. The legislature, in enacting the foregoing statutes, has recognized that differing factual situations may arise, and has provided a flexible means for equalizing the resultant economic imbalances.

It is clear the spirit and intent of K. S. A. 72-5316a, *et seq.*, is to provide an equitable means for adjusting the rights and claims of adjoining school districts where there has been an annexation, such as here, that deprives one board of a part of its taxable property with which it otherwise could have paid its existing bonded indebtedness. Here, the court, in applying the provisions of K. S. A. 72-5316e, determined for each year the proportionate part of the bonded indebtedness wholly assumed by the adjacent boards which the Wichita board should pay as the result of the city's annexing taxable property from the adjacent districts that otherwise could have been taxed to help pay such indebtedness. We are of the opinion such a construction of the statute under the facts brings about a fair and equitable adjustment and places the parties in substantially the same economic position after annexation as they were in before annexation.

Referring to the earlier illustration relating to the Campus district for the year 1963, we find that before and after annexation the Campus board owned school property having a fair value of $4,336,-459.04. Before and after annexation the board had an indebtedness (principal and interest) of $4,892,746,28. However, before annexation Campus could anticipate paying its indebtedness from taxes levied upon property valued at $36,727,348; whereas, after annexation its indebtedness must be paid from taxes upon property valued at only $31,958,280. In other words, the Campus district lost 12.98% of its taxable property valued at $4,769,068 which could no longer be levied against. To compensate for this loss, the Campus board was entitled to an amount equal to that which before annexation it could have obtained from taxes on the area annexed. While the Wichita board was, under the court's order, required to pay $636,078.47 to the Campus board, the Wichita board obtained the taxable tangible property of the area annexed. It should be noted, however, the annexed territory would not become subjected to the tax levies of both boards. The territory would be relieved of the

burden of the adjacent board's bonded indebtedness to the extent of $635,078.47; at the same time, the territory would become subject to its proportionate share of the tax levies of the Wichita board under K. S. A. 72-5316b.

The inequity of the result, when appellant's formula is applied to the illustration, is readily apparent. The Campus board would be required to pay the Wichita board the sum of $90,400.38 for the year 1963. While under this approach Campus retains the same bonded indebtedness, it does not receive an adjustment from the Wichita board to help pay such indebtedness. At the same time Campus loses 12.98% of its taxable property, thus reducing its ability to pay the indebtedness. Consequently, by the annexation of territory from the Campus district, the Wichita board gains $90,400.38 plus the taxable property in the annexed area for levies for its own educational purposes. In addition, the application of such a theory would create an unjust tax burden upon the taxable property remaining in the smaller Campus district after annexation, in that a larger levy on the property would be necessary in order to pay the bonded indebtedness wholly assumed by the Campus district.

Under K. S. A. 72-5316e the commissioners are required to make five specific findings. Appellant argues that a proper interpretation of the statute requires the commissioners, in determining finding (5), to include the preceding findings (1), (2) and (3) in their mathematical calculations. In other words, appellant contends the commissioners and court, in computing the amount due, wholly disregarded finding (1)—the value of the school property retained by the adjacent districts. We find nothing in the statute requiring in every case that each of the findings be used in arriving at a fair and equitable adjustment. Indeed, where a definite and precise mathematical calculation was intended, the legislature so stated, by the language used in relation to finding (3). The flexibility of the statute is exemplified by its provisions relating to finding (5) in which the amount due from one board to the other is determined by "taking into account the property retained by the adjacent school district and that acquired by the board of education and the bonded indebtedness assumed by either board." Such language gives the statute adaptability to all factual situations, and permits the commissioners and court to use those findings, or factors, which in a particular case will bring about an equitable adjustment of property rights and claims. Under the circumstances here the court did not

err in disregarding finding (1) in making its calculations. What has been said disposes of appellant's first assignment of error which was predicated on the court's failing to consider the value of the school property retained by the adjacent boards after annexation.

We have not overlooked the appellant's further argument in support of its first assignment of error that the taxpayers in the annexed area were deprived of their equity or interest in the school property retained by the adjacent districts for which compensation should be paid to the Wichita board. No authority is cited to support such a contention. It is well established that there are no vested rights in the existence of a school district. (*Board of Education of Haysville v. Board of Education of Wichita*, supra; *State, ex rel., v. Board of Education*, 173 Kan. 780, 252 P. 2d 859; *State, ex rel., v. School District*, 163 Kan. 650, 185 P. 2d 677.) By the same token, a taxpayer in the annexed area of an adjacent district has no vested rights or interest in school properties remaining in the unannexed area.

Although we can surmise factual situations where the rights and claims between school districts may be properly adjusted by application of a formula similar to that advanced by the appellant, we confine ourselves to the facts before us in holding the adjustment formula applied here was consonant and in harmony with K. S. A. 72-5316a, *et seq.*

Appellant next contends the court erred in instructing the commissioners to give full weight and recognition to the provisions of K. S. A. 10-119 in making their report. We note that at no time during the proceedings did the appellees urge the statute was applicable, and the instruction was given by the court on its own initiative.

Appellant argues that the provisions of K. S. A. 10-119 were improperly injected into the case, inasmuch as K. S. A. 72-5316a, *et seq.*, is a complete and comprehensive law on the subject of the adjustment of property rights and claims between school districts affected by extension of city boundaries through annexation. We agree and are of the opinion that the trial court should not have included the provisions of K. S. A. 10-119 in its instructions. However, it does not appear the statute affected the findings of the commissioners or that its provisions were even considered by them or the court in the final calculations. We have already determined

the formula applied was correct; consequently, the inclusion of K. S. A. 10-119 in the instructions becomes immaterial.

We need not determine here whether K. S. A. 10-119 provides the bondholders a remedy for payment by levy against the annexed territory. If such remedy does in fact exist, it merely offers a secondary method of securing payment of such indebtedness, inasmuch as the legislature by a complete and comprehensive act (K. S. A. 72-5316a, *et seq.*) has provided for the adjustment of property rights and claims, taking into consideration "the bonded indebtedness assumed by either board." (Finding (5), K. S. A. 72-5316e.)

As a part of appellant's argument on this point it is urged that the court erroneously adopted and applied a formula conforming to a proposed, but not adopted, amendment to K. S. A. 72-5316c, House Bill No. 379 of the 1963 legislative session. The bill provided that in the event there were no buildings of the adjacent school district located in the annexed territory, the existing bonded indebtedness of said district should be paid by the respective districts on the basis of the ratio of the assessed valuation of the tangible taxable property in the territory annexed and in the territory of the adjacent school district which was not annexed, and the city school district should pay to the adjacent school district annually the proportionate share of the bonds and interest as they became due.

Appellant contends that the appellees, by the judgment rendered, received the very relief the proposed amendment would have given them, and inasmuch as the proposal was not adopted, the legislature did not intend for K. S. A. 72-5316e to be interpreted in such a way as to accomplish that which the amendment provided. We do not agree. Appellant attaches undue significance to the fact the proposed amendment was rejected. It is just as logical to say the legislature rejected the amendment because it was satisfied the provisions of K. S. A. 72-5316e were sufficiently broad and flexible to cover not only the precise situation outlined in the amendment but also different factual situations that might arise. (See *State v. Lancashire Insurance Company*, 66 Ark. 466, 51 S. W. 633.)

The Wichita board next contends the court erroneously included future and unearned interest on the unpaid bonded indebtedness of the adjacent districts in calculating the amount due.

Ordinarily, identical words or terms used in different statutes on a specific subject are interpreted to have the same meaning in the absence of anything in the context to indicate that a different

meaning was intended. Likewise, other sections of the same act in which the same word or phrase is used may be resorted to as an aid in determining the meaning thereof. (50 Am. Jur., Statutes §§ 271, 272; 82 C. J. S., Statutes § 316, p. 553.) Hence, the provisions of K. S. A. 72-5316c and 72-5316e must be read and construed together with a view of giving effect to the legislative intent.

The wording of K. S. A. 72-5316c, in our opinion, clearly indicates that it was intended the bonded indebtedness assumed by a board would include future and unearned interest thereon. A contrary interpretation would lead to the unreasonable and absurd result of a board assuming payment of only the principal—but not the interest—on such bonds. The consequences of such an interpretation would be that interest on bonded indebtedness would be completely disregarded in the adjustment of claims between the districts. We cannot conceive that the legislature intended such a result. It is a cardinal rule of statutory construction that the legislature intended a statute be given a reasonable construction so as to avoid unreasonable and absurd consequences. (*Equitable Life Assurance Society v. Hobbs,* 154 Kan. 1, 114 P. 2d 871, 135 A. L. R. 1234; *Commerce Trust Co. v. Paulen,* 126 Kan. 777, 271 Pac. 388, 63 A. L. R. 384.) Had there been no annexation, an adjacent board would be liable for *both* principal and interest payments. It would be illogical to assume the legislature intended that the board's obligation to pay interest was to be overlooked in the assumption of the bonded indebtedness by either the city board or adjacent board after annexation. The language of the exception clause of the statute making the adjacent district liable for both principal and interest payments up to a certain date further demonstrates that the items were to be considered inseparable, in reference to the liability of a district for unpaid bonded indebtedness.

In view of what has been said, the phrase "debts, including unpaid bonded indebtedness" as used in K. S. A. 72-5316e in regard to finding (2) encompasses future and unearned interest on such bonds. The requirement of K. S. A. 72-5316e that the court, in making its final determination of the amount due one district from the other, should take into account "the bonded indebtedness assumed by either board" clearly has reference to K. S. A. 72-5316c. The board that is to assume the indebtedness is determined by the provisions of the latter statute, and as we have indicated, the bonded indebtedness assumed includes both principal and interest payments.

The cases cited by the appellant for the proposition that future and unearned interest is not a present "debt" have no application in the adjustment of claims between school districts in these types of proceedings.

We have not overlooked appellant's argument that the judgment against it, which includes future and unearned interest on the outstanding bonds, will be fully paid within two years if the maximum levy authorized by K. S. A. 72-5316f is imposed. The bonds are noncallable and extend over approximately fourteen to fifteen years from the date of judgment. This, appellant contends, permits the appellees to have use of money which they are not obligated to pay until the periodic principal and interest payments on the bonds become due. We are not impressed. The statute merely authorizes an annual levy of "not to exceed two mills" upon taxable tangible property within the territory of the Wichita district. Whether the county clerk will impose the maximum levy is a matter solely within his discretion and completely beyond the control of the court in these proceedings. In fixing the amount of the levy, the clerk may consider the fact the bonds are noncallable, but that is something with which the court was not concerned in determining the amount due.

The remaining assignments of error do not pertain to the adjustment formula.

Appellant complains the court abused its discretion in allowing excessive fees to the three commissioners. The record reveals the commissioners performed services throughout a period of approximately one year. They were confronted at every stage of their work with the conflicting theories vigorously espoused by the parties. Considering the magnitude of the issues, and the time involved, the fees allowed were reasonable, and there was no abuse of discretion by the court.

The last contention advanced by appellant is that the court erred in failing to grant a new trial because of misconduct of opposing counsel during the proceedings. The misconduct alleged is that former counsel for appellees, along with a representative from a utility company taxpayer, held a "secret" meeting with the commissioners. We have carefully examined the record on the point and fail to find anything to substantiate appellant's allegations of prejudice. The motion for new trial was properly overruled.

The judgment of the district court is affirmed.