No. 56,739

T-Bone Feeders, Inc., and J & J Feeders, Inc., *Applicants,* and Kansas Livestock Association, *Intervenor, Plaintiffs-Appellants,* v. Philip W. Martin, Director, Division of Property Valuation of the State of Kansas; Harley T. Duncan, Secretary of Revenue, State of Kansas; and Board of County Commissioners, Sherman County, Kansas, *Defendants-Appellees.*

(693 P.2d 1187)

Opinion filed January 26, 1985.

*Wilbur G. Leonard,* of Topeka, argued the cause and was on the briefs for the appellants.

*Carol B. Bonebrake,* of Kansas Department of Revenue, argued the cause and was on the brief for the appellees, Philip W. Martin and Harley T. Duncan.

*F.L. McGinley,* of Goodland, was on the brief for the appellee, Board of County Commissioners.

The opinion of the court was delivered by

Prager, J.: This is an administrative appeal from an order of the Board of Tax Appeals of the State of Kansas (BOTA) denying the claims of two corporate taxpayers for an exemption from taxation of certain personal property owned by them and used in the operation of their cattle feedlots. The district court of Shawnee County affirmed the order of BOTA, and the taxpayers then filed an appeal to this court. The taxpayers, appellants in this case, are T-Bone Feeders, Inc., and J & J Feeders, Inc., applicants for the exemption. The Kansas Livestock Association was permitted to intervene in the case in support of the taxpayers. The appellees participating in this appeal include Philip W. Martin, Director, Division of Property Valuation of the State of Kansas; Harley T. Duncan, Secretary of Revenue; and the Board of County Commissioners of Sherman County. They will be referred to as the taxing agencies.

The claim of exemption in this case was made by the taxpayers on the basis of K.S.A. 1982 Supp. 79-201i and 79-201j, which

were enacted in 1982. K.S.A. 1982 Supp. 79-201j provides an exemption from ad valorem taxation for farm machinery and equipment in the following language:

"79-201j. **Property exempt from taxation; farm machinery and equipment.** The following described property, to the extent specified by this section, shall be exempt from all property or ad valorem taxes levied under the laws of the state of Kansas:

"All farm machinery and equipment. *The term 'farm machinery and equipment' means that personal property actually and regularly used exclusively in farming or ranching operations.* The term 'farm machinery and equipment' shall not include any passenger vehicle, truck, truck tractor, trailer, semitrailer or pole trailer, other than a farm trailer, as the terms are defined by K.S.A. 8-126 and amendments thereto.

"The provisions of this section shall apply to all taxable years commencing after December 31, 1981." (Emphasis supplied.)

K.S.A. 1982 Supp. 79-201i, which was enacted along with 79-201j in Chapter 390, Laws of 1982, sets forth the legislative purpose of the tax exemption:

"79-201i. **Purpose for farm machinery and equipment property tax exemption.** *It is the purpose of K.S.A. 1982 Supp 79-201j of this act to promote, stimulate and develop the general welfare, economic development and prosperity of the state of Kansas by fostering the growth and development of agricultural endeavors within the state.* Agriculture, as conducted in farming and ranching operations throughout the state, is the primary basis of the Kansas economy. Communities, regions, and the state as a whole are materially dependent upon agricultural endeavors and derive substantial financial benefit from the success of Kansas agriculture. Farming and ranching operations require the investment of large sums of capital for the purpose of providing the land on which the operations are conducted, and the farm machinery and equipment necessary to satisfactorily carry out such endeavors. Because of agriculture's unique requirements of substantial capital investment, the property tax burden becomes a deterrent to such investment and, in some instances, an encouragement to farm and ranch abandonment. Kansas, and all its citizens, will benefit from any improvement in the economic environment of Kansas agriculture. *The exemption from the ad valorem property tax of farm machinery and equipment actually and regularly used in farming and ranching operations will constitute an incentive to agriculture and will improve the general economy of the state.* Considering this state's heavy reliance on agriculture, the enhancement of agricultural endeavors is deemed to be a public purpose which will promote the general welfare of the state and be for the benefit of the people of the state." (Emphasis supplied.)

In order to determine the question of exemption raised in this case, it is necessary to interpret the legislative intent as expressed in the two statutes set forth above and to apply the same

to the undisputed factual circumstances present in this case. Simply stated they are as follows: T-Bone Feeders, Inc., and J & J Feeders, Inc. (the taxpayers) are separately engaged in the commercial feedlot business.

T-Bone Feeders, Inc., is a Kansas corporation, 97% owned by members of the House family, who are responsible for the management of the feedlot which has a capacity of 5,500 head. Recent occupancy varies from 3,700 to 4,200 head, of which approximately 70% are owned by the House family. In 1983 the family's cultivated farming operations included 6,030 acres owned by them and 3,840 acres leased from others, on which land they produced a substantial part of the grain and other foodstuffs fed to feedlot cattle.

J & J Feeders, Inc., is a Kansas corporation, wholly owned by John Cogswell who also owns and operates one hundred quarters (25 sections) of grassland on which he maintains an extensive cattle herd. The feedlot, near Goodland, has a capacity of 7,500 head, with an estimated break-even point of 3,500 head. From one-third to one-half of the cattle on feed are owned by Mr. Cogswell, with the remainder belonging to other persons. The Cogswell pastures annually provide some 500 tons of hay for feedlot use. Grains and other foodstuffs are purchased from neighboring farmers.

The Kansas Livestock Association was permitted to intervene in the case before BOTA on behalf of the Kansas livestock industry and the cattle feedlots which are members of the association. It supported taxpayers' applications for exemption before BOTA and joins the taxpayers in this appeal.

The personal property for which exemption is claimed includes such items as grinders, loaders, tractors, dirt movers, sprayers, hay trailers, feed boxes and other equipment used in the feeding and maintenance of the cattle and the general upkeep of the feedlot facilities. Equipment and machinery used on farms and ranches are not involved in this case.

The physical facilities maintained by these taxpayers are typical of the feedlots operated throughout the state. Their sole purpose is to complete the final conditioning of beef animals, at the end of which period the cattle are shipped to nearby packers for slaughter and processing. Termed "feeder cattle," most animals are about two years old and weigh from 500 to 750 pounds

when they enter the feedlots. They previously have been on grass, wheat pasture or other type of forage and usually have not been fed a substantial amount of grain. When received at the feedlot they are vaccinated, dipped, tagged for identification and subjected to other veterinary procedures. They are then confined in pens of 100 to 200 head and fed concentrated diets of grain, roughage and supplements to produce the maximum gain in the shortest period of time. Usually, the feeding cycle is from three to six months, depending on the size and condition of the animal when it is received, the feeding formula used, weather conditions and other factors.

The basic issue in the case is stated by the taxpayers in the following manner: Is the machinery and equipment actually and regularly used exclusively in the operation of cattle feedlots exempt from personal property taxation under the provisions of K.S.A. 1982 Supp. 79-201i and 79-201j, when the owners of such feedlots, in addition to feeding their own cattle, feed cattle belonging to other persons?

Following the filing of the claims for exemption, BOTA set the claims for hearing and afforded the parties a full opportunity to present their evidence and legal arguments. After hearing all the evidence and having received briefs of counsel for the taxpayers and the taxing agencies, BOTA on May 2, 1983, denied the taxpayers' applications for exemption. In denying the claims for exemption, BOTA found that the taxpayers' machinery and equipment used in their feedlot operations were not used exclusively in farming or ranching operations. BOTA concluded that the taxpayers used their machinery and equipment for a dual purpose:

(1) In a service-oriented business in connection with cattle owned by the taxpayers; and

(2) as instruments of husbandry with respect to cattle owned by the taxpayers.

In arriving at its decision, BOTA noted the term "agricultural" is a much broader term than "farming or ranching." BOTA recognized that commercial feedlots are agricultural endeavors or agri-businesses, but held they do not fall in the category of "farming or ranching operations." The taxpayers appealed the order of BOTA to the district court of Shawnee County pursuant to K.S.A. 74-2426(d)(2) which affirmed the decision of BOTA in a

short memorandum decision stating it agreed with the conclusions reached by BOTA.

As we view it, the sole issue presented on appeal is whether the machinery and equipment used by the taxpayers in their commercial feedlot operations constituted "personal property actually and regularly used exclusively in farming or ranching operations," so as to be exempt under the provisions of K.S.A. 1982 Supp. 79-201j. Before considering this basic issue, it would be helpful to consider the scope of review of an appellate court on appeal from an administrative decision and the accepted legal principles applied in Kansas where a claim is presented for exemption from ad valorem taxation.

The BOTA decision which is before us for review is an administrative decision and is subject to the same limited review as are decisions of other administrative tribunals. *Northern Natural Gas Co. v. Dwyer,* 208 Kan. 337, 492 P.2d 147 (1971), *cert. denied* 406 U.S. 967 (1972). On appeal from an administrative decision, a district court may not hear the appeal de novo, but is restricted to considering whether, as a matter of law, (a) the administrative tribunal acted fraudulently, arbitrarily, or capriciously; (b) the administrative order is substantially supported by the evidence; and (c) the tribunal's action was within the scope of its authority. *Lauber v. Firemen's Relief Association,* 202 Kan. 564, 451 P. 2d 488 (1969).

Whether certain property is exempt from ad valorem taxation is a question of law if the facts are agreed upon, and is a mixed question of law and fact if the facts are controverted. *State, ex rel., v. Davis,* 144 Kan. 708, 709, 62 P.2d 893 (1936). In the case now before us, there is no factual dispute. The issue presented to the district court and on appeal to this court is strictly a question of law: Whether the taxpayers' farm machinery and equipment, used in the operation of their feedlots, is exempt as farm machinery and equipment under the provisions of K.S.A. 1982 Supp. 79-201j.

In cases involving questions of claimed exemption from ad valorem taxation, the following rules and legal principles have been established as guidelines to be followed by the courts:

(1) Taxation is the rule; exemption is the exception. All doubts are to be resolved against exemption and in favor of taxation.

*Manhattan Masonic Temple Ass'n v. Rhodes,* 132 Kan. 646, 649, 296 Pac. 734 (1931);

(2) Constitutional and statutory provisions exempting property from taxation are to be strictly construed. *Lutheran Home, Inc., v. Board of County Commissioners,* 211 Kan. 270, 275, 505 P.2d 1118 (1973); *In re Board of Johnson County Comm'rs,* 225 Kan. 517, 519, 592 P.2d 875 (1979);

(3) The burden of establishing exemption from taxation is on the one claiming it. *Seventh Day Adventist v. Board of County Commissioners,* 211 Kan. 683, 690, 508 P.2d 911 (1973);

(4) The question is not whether or not the property is used partly or even largely for the purpose stated in the exemption provisions, but whether it is used exclusively for those purposes. *Clements v. Ljungdahl,* 161 Kan. 274, 167 P.2d 603 (1946); *In re Board of Johnson County Comm'rs,* 225 Kan. at 519.

(5) The phrase "used exclusively" in the constitution and statutes means that the use made of the property sought to be exempted from taxation must be only, solely, and purely for the purposes stated, and without participation in any other use. *Seventh Day Adventist v. Board of County Commissioners,* 211 Kan. 683.

With these basic legal principles in mind, we turn now to the somewhat difficult task of determining the legislative intent in enacting K.S.A. 1982 Supp. 79-201i and 79-201j. K.S.A. 1982 Supp. 79-201i is quoted in full above, and states the purpose for the farm machinery and equipment property tax exemption. It is stated there that the purpose of K.S.A. 1982 Supp. 79-201j is to promote, stimulate, and develop the economic development and prosperity of the State of Kansas by fostering the growth and development of *agricultural endeavors* within the state. The legislature recognizes that agriculture, as conducted in farming and ranching operations throughout the state, is the primary basis of the Kansas economy. The language used in the statute indicates that the term "agriculture" is a broader term than "farming and ranching operations." The term "agricultural endeavors" is used several times in 79-201i, but the legislature in granting the statutory exemption under 79-201j did not grant the exemption to all "agricultural endeavors." On the contrary, it restricted and limited the exemption only to that machinery and equipment which was "actually and regularly used exclusively in *farming or ranching operations."*

It has been recognized that the term "agriculture" is a term much broader in meaning than the terms "farming" or "ranching." BOTA specifically recognized those cases which hold that commercial feedlots fall into the category of agricultural endeavors. See for example *Fields v. Anderson Cattle Co.*, 193 Kan. 558, 396 P.2d 276 (1964), and *Brookover Feed Yards, Inc. v. Carlton, Commissioner*, 213 Kan. 684, 518 P.2d 470 (1974). That fact, however, does not make a commercial feedlot a "farm" or "ranch." Various jurisdictions have recognized this distinction, holding that an exemption for "agricultural purposes" is much broader than one for farms. See the many cases cited in the annotation in 97 A.L.R.2d 702 on the subject of construction and application of the terms "agricultural," "farm," or "farming," or the like, in zoning regulations.

*In Weed v. Monfort Feed Lots*, 156 Colo. 577, 402 P.2d 177 (1965), certain corporations, which operated feedlots where cattle were finished for market and which used motor vehicles to transport livestock and feed for the cattle, claimed that they were exempt from the ton mile tax because they were "farmers or ranchers." At the trial court level, it was determined that the feedlot operators were farmers and ranchers and, as such, were exempt from the tax. On appeal, the Supreme Court of Colorado reversed, holding that the Colorado statute granting the exemption should be strictly construed and that the feedlot operators were not farmers or ranchers within the meaning of the statutory exemption.

The Kansas legislature, in several statutory enactments, has obviously recognized that a feedlot operation is an agricultural pursuit but something different from a "farm" or "ranch." In 1963, the legislature enacted K.S.A. 47-1501 *et seq.*, providing for the regulation of feedlots within the state. In K.S.A. 47-1501, the words "feed yard feeding" are defined as the feeding of livestock in lots or pens *which are not used normally for raising crops and in which no vegetation, intended for livestock feed, is growing.* The term "feedlot" is defined to mean (1) a livestock feedlot, or feed yard, having more than one thousand head of livestock at one time during the licensed year, or (2) any other livestock feedlot whose operator elects to come under the act.

In K.S.A. 47-1502, it is stated that the feeding of livestock, and animal husbandry, shall be construed to be an agricultural pur-

suit. K.S.A. 47-1503 requires a feedlot operator to obtain a license from the livestock commissioner authorizing and permitting such operation. A feedlot operator is required to pay a license fee, the amount of which depends upon the feedlot capacity. By this act, it is clear that the legislature has recognized that there is a distinction between cattle feeding in a commercial feedlot and cattle feeding in places used normally for raising crops and where there is vegetation growing, intended for livestock feed, which could only be a farm or ranch.

In another chapter of the Kansas statutes, the legislature has also recognized the distinction between a feedlot and a farming or ranching operation. At K.S.A. 17-5902 *et seq.*, which regulates and places restrictions on agricultural corporations, such corporations are prohibited, either directly or indirectly, from owning, acquiring, or leasing any agricultural land in the state. These restrictions are subject to certain exceptions including agricultural land held or leased by a corporation for use as a feedlot. K.S.A. 17-5904(a)(8).

In K.S.A. 17-5903, the terms "feedlot" and "farming" are distinguished. K.S.A. 17-5903(e) defines "feedlot" to mean "a lot, yard, corral, or other area in which livestock *fed for slaughter* are confined." The term includes, within its meaning, agricultural land in such acreage as is necessary for the operation of the feedlot. "Agricultural land" is defined as land suitable for use in farming. "Farming" is defined as the cultivation of land for the production of agricultural crops, the raising of poultry, the production of eggs, the production of milk, the production of fruit or other horticultural crops, *grazing* or the *production of livestock*. It is stated specifically that farming does not include a contract to provide spraying, harvesting, or other farm services. A reading of K.S.A. 17-5902 *et seq.* demonstrates to us that the legislature considers a feedlot to be something different from a farm or ranch.

It is a well recognized rule of statutory construction used to determine legislative intent that ordinarily identical words or terms used in different statutes on a specific subject are interpreted to have the same meaning in the absence of anything in the context to indicate that a different meaning was intended. *Callaway v. City of Overland Park,* 211 Kan. 646, 652, 508 P.2d 902 (1973); *Banister v. Carnes,* 9 Kan. App. 2d 133, 136, 675 P.2d

906 (1983); *Williams v. Board of Education,* 198 Kan. 115, 124, 422 P.2d 874 (1967).

We have concluded that machinery and equipment used in a commercial feedlot operation are not personal property used exclusively in farming and ranching operations and are not included within the exemption from property or ad valorem taxes provided under K.S.A. 1982 Supp. 79-201j. Although, as noted above, feedlot operations are agricultural endeavors and highly specialized agri-businesses, we hold that it was not the intent of the legislature to include such operations within the category of "farming or ranching operations" under that statute.

The taxpayers further contend on appeal that the action by BOTA unconstitutionally established a class of farmers and ranchers who will enjoy the tax exemption, while others, similarly situated, will be required to pay personal property taxes on their farm machinery and equipment. In urging this point, the taxpayers have assumed that a feedlot operator who feeds only his own cattle will be exempt from the tax while a feedlot operator who feeds the cattle of other persons will not be exempt. We do not so construe the statute. The two taxpayers in this case are operators of *commercial* feedlots. Although they feed some of their own cattle, they also feed cattle owned by others. As noted above, we have held that a feedlot operation is not a farming or ranching operation within the tax exemption provided under K.S.A. 1982 Supp. 79-201j. This case does not involve a factual situation where a farmer or rancher has a particular area of his farm or ranch used to feed his cattle and to prepare them for slaughter. Whether or not such a place for feeding cattle would be considered an integral part of the farming and ranching operation or an entirely separate operation would, of necessity, depend upon the facts and circumstances of each particular case. Our ruling here is restricted in its application to commercial feedlots maintained separately and apart from a farm or ranch. We thus hold that, under the factual circumstances present in this case, the taxpayers were not entitled to the tax exemption provided under K.S.A. 1982 Supp. 79-201j and that BOTA and the district court were correct in so holding.

The judgment of the district court is affirmed.