Daniel D. Creitz, Counsel Consolidated Unified School District No. 101 P.O. Box 108 Erie, Kansas 66733
Dear Mr. Creitz:
As legal counsel for Consolidated Unified School District No. 101, you request our opinion regarding issues related to the establishment and operation of a recreation system by a consolidated school district.
Consolidated Unified School District No. 101 (CUSD #101) was organized pursuant to K.S.A. 72-8701 et seq. It is located entirely within Neosho County and serves the communities of Erie, St. Paul, Galesburg, Stark, and Thayer. The City of Erie is the only community within CUSD #101 that has created a recreation system. The Board of Education for CUSD #101 is considering creating a recreation system pursuant to K.S.A. 12-1922 etseq. Your specific questions are: 1) whether K.S.A. 12-1925 permits a school district to establish a joint recreation commission with more than one city located in the territory of CUSD #101; 2) whether the City of Erie could be forced to participate in a joint recreation system created by CUSD #101, or in the alternative, whether CUSD #101 could create a joint recreation system without including the City of Erie; 3) whether CUSD #101 is precluded from creating a joint recreation system with all five communities located in its territory given the requirements of K.S.A. 1998 Supp. 12-1926 regarding the make-up of the recreation commission; and 4) whether CUSD #101 is precluded from creating a recreation system because such system was not in place prior to the enactment of K.S.A. 12-1901 et seq.
1. You initially ask whether K.S.A. 12-1925 permits a school district to establish a joint recreation commission with more than one city located in the territory of a school district.
K.S.A. 12-1922 et seq. provide a procedure whereby a city or unified school district may establish, independently or jointly, a system of public recreation. K.S.A. 12-1925 states in part:
 "(b) A petition requesting the governing bodies of a city and school district to establish a joint recreation system and signed by at least 5% of the qualified voters of the city or school district may be filed with the clerk of the city or school district. . . . If the petition is found sufficient, the proposition shall be submitted to the qualified voters within the city or school district, whichever has the greater assessed valuation. Such election shall be called and held in the manner provided by the general bond law, and the cost of the election shall be borne equally by the city and the school district.
 "(c) The governing body of any city and any school district may initiate the establishment of a joint district recreation system by adopting a joint ordinance or resolution proposing to establish a joint recreation system and to levy an annual tax not to exceed one mill for such recreation system and to pay a portion of the principal and interest on bonds issued pursuant to K.S.A. 12-1774, and amendments thereto. The proposal shall be submitted for approval by the voters of the city or school district, whichever has the greater assessed valuation, at an election called and held in the manner provided by the general bond law, and the cost of the election shall be borne equally by the city and the school district.
 "(d) Upon approval of the proposition by a majority of those voting on it at the election . . . the governing bodies of a city and school district acting jointly, by appropriate resolution or ordinance, shall provide for the establishment, maintenance and conduct of such recreation system as they deem advisable and practicable and shall appoint a recreation commission as provided by K.S.A. 12-1926 to be vested with the powers, duties and obligations necessary for the conduct of such recreation system."
In determining whether a joint recreation system may be established by two or more cities and a school district, we look to the rules of statutory construction set forth in K.S.A. 77-201.
 "In the construction of the statutes of this state the following rules shall be observed, unless the construction would be inconsistent with the manifest intent of the legislature or repugnant to the context of the statute:
. . . .
 "Third. Words importing the singular number only may be extended to several persons or things, and words importing the plural number only may be applied to one person or thing. . . ."[1]
Whether the term "city" as used in K.S.A. 12-1925 may be interpreted in the plural without violating the manifest intent of the Legislature, we look to other provisions of the legislative act as well as the history of the enactment. The fundamental rule of statutory construction is that the intent of the legislature governs.[2] "In construing statutes, the legislative intention is to be determined from a general consideration of the entire act."[3] "In determining legislative intent, courts are not limited to a mere consideration of the language used, but look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested."[4]
The rules of statutory construction provide that "[a] statute should never be given construction that leads to uncertainty, injustice, or confusion, if possible to construe it otherwise."[5] "[O]rdinarily identical words or terms used in different statutes on a specific subject are interpreted to have the same meaning in the absence of anything in the context to indicate that a different meaning was intended."[6]
Allowing the term "city" in K.S.A. 12-1925 to be interpreted in its plural form so as to permit establishment of a joint recreation system by a school district and two or more cities would cause confusion in the interpretation of other provisions in K.S.A. 12-1922 et seq. For example, the distribution of election expenses is governed by K.S.A.12-1925.
 "(b) A petition requesting the governing bodies of a city and school district to establish a joint recreation system and signed by at least 5% of the qualified voters of the city or school district may be filed with the clerk of the city or school district. . . . If the petition is found sufficient, the proposition shall be submitted to the qualified voters within the city or school district, whichever has the greater assessed valuation. Such election shall be called and held in the manner provided by the general bond law, and the cost of the election shall be borne equally by the city and the school district."[7]
Subsection (c) of K.S.A. 12-1925 contains the same provision regarding allocation of the costs of the election in situations where the establishment of the joint recreation system was proposed by the city and school district through adoption of a joint resolution or ordinance.
Further, K.S.A. 1998 Supp. 12-1926 establishes the membership of the recreation commission.
"(a) Except as provided by this section, recreation commissions shall consist of five members to be appointed as follows: . . . (2) upon the adoption of the provisions of this act by the city and school district acting jointly, the governing bodies each shall appoint two persons whoare residents of the taxing district to serve as members of therecreation commission, and the persons so selected shall select one additional person, and all of such persons shall constitute the recreation commission."[8]
"When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be."[9] The provisions in K.S.A. 12-1925
regarding allocation of the costs of the election and K.S.A. 1998 Supp.12-1926 clearly contemplate a joint recreation system established by one city and a school district. When interpreted as written, K.S.A. 12-1925
requires that the costs of an election be borne equally by a city and a school district. If "city" was deemed to include "cities," the question regarding whether the cities would bear one-half the costs of the election or whether each city and the school district would be responsible for equal portions of the costs of the election would be raised. Likewise, K.S.A. 1998 Supp. 12-1926 authorizes each governing body to select two members to the recreation commission. If the provision was interpreted to permit multiple cities to form a recreation system with a school district, it would have to be determined whether each city appointed two members to the recreation commission, thereby violating the provision that a recreation commission be composed of five members, or whether the cities as a group would be permitted to appoint only two members to the recreation commission. The term "city" must, therefore, be interpreted as written. To interpret the term in its plural form would violate the apparent intent of the Legislature. Therefore, a joint recreation system may not be established by a school district and more than one city.
The history of the enactment provides additional support for this conclusion. K.S.A. 12-1922 et seq. were essentially a recodification of the recreation commission statutes that had previously existed in Article 19 of Chapter 12 of the Kansas Statutes Annotated.[10] The statutes in Article 19 which originally authorized the establishment of a recreation system by a city, school district, or both were enacted in 1945.[11] In 1965, Article 19 of Chapter 12 of the Kansas Statutes Annotated was amended in part to provide a means for the continued operation of recreation systems which had been established prior to school unification.[12] The Legislature recognized that through unification, a unified school district could include two cities, each of which had established and operated a joint recreation commission with its local school district that was abolished through school unification. Rather than allow the formation of a joint recreation system by two cities and a school district, the continued operation of the recreation system was subject to a vote of the electorate of the school district. The question to be submitted to the voters was "Shall unified school district No. , county, state of Kansas, continue with the recreation system?"[13] The statute then stated:
"Where the unified district has in it two cities which had voted jointly with the superseded districts to establish recreation systems, the two recreation commissions shall function, sharing according to the assessed tangible valuation of the cities in the recreation tax levied by the unified district until the election to continue the recreation system: Provided, That if the unified district elects to continue the system, the recreation commissions shall be dissolved and the board of education of the unified district shall appoint a new recreation commission, and the governing bodies of the cities shall thereafter have no connection with the recreation system: Provided further, That if the vote is against continuation, each city shall thereafter operate a recreation system the same as if each city alone had voted for a system, the members of the recreation commission appointed by the school district shall be replaced by members appointed by the governing body of the city, and the assets apportioned to the city recreation commissions in proportion to the assessed tangible valuations of the cities."[14]
The legislation enacted in 1965 did not allow for the continued operation of a joint recreation system by two cities and a school district. While the statute was repealed in 1974,[15] it did indicate the legislative intent in enacting Article 19 of Chapter 12 of the Kansas Statutes Annotated that the term "city" was to be interpreted only in its singular form. "Ordinarily, there is a presumption that a change in the language of a statute results from the legislative purpose to change its effect, but this presumption may be strong or weak according to the circumstances, and may be wanting altogether in a particular case. The presumption is fairly strong in the case of an isolated, independent amendment, but is of little force in the case of amendments adopted in a general revision or codification of the law."[16] Recodification of the statutes in 1985 did not alter the legislative intent.
2. You next ask whether a city which operates an independent recreation system could be forced to participate in a joint recreation system created by a school district, or in the alternative, whether a school district could create a joint recreation system without including such city.
Three forms of recreation systems are recognized by State statute: a recreation system operated independently by a city; a recreation system operated independently by a unified school district; and a recreation system operated jointly by a city and a unified school district.[17]
The establishment of an independent or joint recreation system is proposed by electors filing a valid petition and the electors then approving through an election the establishment of the recreation system.[18] In addition, a joint recreation system may be proposed through the adoption of a joint ordinance or resolution by a city and school district, subject to a vote of the electorate.[19] Therefore, the electors of a city may compel the city to establish a recreation system, either independently or jointly with a school district. However, we can find no mechanism through which a school district may force a city to participate in the establishment and operation of a recreation system.
"Any city or school district may establish, independently or jointly, a recreation system."[20] "When a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in the statute. When construing a statute, a court should give words in common usage their natural and ordinary meaning."[21] We can find no requirement that a school district wishing to create a joint recreation system do so with a city that already operates an independent recreation system. Such a requirement will not be read into the statute.
While a city within the boundaries of a school district may choose not to participate in the establishment and governance of a joint recreation commission, the city may be within the taxing district of the joint recreation commission. "'[T]axing district' means . . . (2) the area within the boundary lines of a school district in the case of a school district-established recreation system; or (3) the area within the corporate limits of a city or the area within the boundary lines of a school district, whichever has the greater assessed valuation, in the case of a jointly established recreation system."[22] If a city which operates an independent recreation system chooses to not participate in the joint recreation system established by a school district, the city would have no right to representation on the recreation commission, would not be required to contribute facilities to the joint recreation system, and could continue to operate its own independent recreation commission.[23] The city, however, would be a part of the joint recreation commission taxing district, subject to the levy of a tax to provide funds for the operation of the joint recreation system.[24]
3. Your third question is whether a school district is precluded from creating a joint recreation system with all five communities located in its territory given the requirements of K.S.A. 1998 Supp. 12-1926
regarding the make-up of the recreation commission. This issue is moot as it was previously determined a joint recreation system may not be formed by a school district and two or more cities.
4. In your final question, you ask whether a school district is precluded from creating a recreation system if such system was not in place prior to the enactment of K.S.A. 12-1901 et seq. You raise this issue due to concerns over language included in K.S.A. 1998 Supp. 12-1926.
Subsection (b) of K.S.A. 1998 Supp. 12-1926 states in part:
 "Any recreation commission established pursuant to K.S.A. 12-1901 et seq., and amendments thereto, prior to the effective date of this act may continue as constituted on the effective date of this act or may, upon a majority vote of the commissioners, reorganize into a five-member commission as provided by subsection (a). . . ."
Read in isolation, the provision may appear to preclude establishment of new recreation systems. However, "[i]n construing statutes, the legislative intention is to be determined from a general consideration of the entire act."[25] K.S.A. 12-1923 permits the continued existence of recreation systems established under the provisions of Article 19 of Chapter 12 of the Kansas Statutes Annotated prior to the effective date of K.S.A. 12-1922 et seq. Any such recreation system was to be operated pursuant to K.S.A. 12-1922 et seq.[26] The statutes then provide for the establishment of a recreation system by "[a]ny city or school district. . . independently or jointly. . . ."[27] Subsection (a) of K.S.A. 1998 Supp. 12-1926 provides for the appointment of members to a recreation commission "(1) [u]pon the adoption of the provisions of [K.S.A. 12-1922et seq.] by the city or school district acting independently . . . or (2) upon the adoption of the provisions of [K.S.A. 12-1922 et seq.] by the city and school district acting jointly. . . ." The members are to be appointed in such manner that the terms of office will thereafter be staggered.[28] After considering all the provisions included in K.S.A.12-1922 et seq., it is determined that a school district may establish a recreation system even if the school district had not established a recreation system prior to the enactment of K.S.A. 12-1901 et seq.
In review, a joint recreation system may not be established by a school district and more than one city. The electors of a city may compel the city to establish a recreation system, either independently or jointly with a school district. However, there is no mechanism through which a school district may force a city to participate in the establishment and operation of a recreation system. A school district wishing to create a joint recreation system is not required to form such joint system with a city that already operates an independent recreation system. If a city that operates an independent recreation system chooses to not participate in the joint recreation system established by a school district, the city would have no right to representation on the recreation commission, would not be required to contribute facilities to the joint recreation system, and could continue to operate its own independent recreation system. The city, however, would be a part of the joint recreation commission taxing district, subject to the levy of a tax to provide funds for the operation of the joint recreation system. A school district may establish a recreation system even if the school district had not established a recreation system prior to the enactment of K.S.A. 12-1901 et seq.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
CJS:JLM:RDS:jm
[1] K.S.A. 77-201 Third.
[2] Adams v. St. Francis Regional Med. Ctr., 264 Kan. 144, 156
(1998).
[3] Citizens' Utility Ratepayer Board v. Kansas Corporation Comm'n,264 Kan. 363, 391 (1998).
[4] Adams, 264 Kan. at 156., quoting State v. Le, 260 Kan. 845, Syl. ¶ 3 (1996).
[5] KPERS v. Reimer Koger Assocs., Inc., 261 Kan. 17, 26 (1996), quoting Coe v. Security National Ins. Co., 228 Kan. 624, Syl. ¶ 2 (1980).
[6] T-Bone Feeders, Inc. v. Martin, 236 Kan. 641, 648 (1985).
[7] K.S.A. 12-1925 (emphasis added).
[8] K.S.A. 1998 Supp. 12-1926 (emphasis added).
[9] Biritz v. Williams, 262 Kan. 769, 774 (1997).
[10] Minutes, House Committee on Local Government, March 2, 1987; Minutes, Senate Committee on Local Government, March 30, 1987.
[11] See L. 1945, Ch. 108, §§ 1 — 10, codified at K.S.A. 12-1901 to 12-1910.
[12] See L. 1965, Ch. 110, §§ 1, 2.
[13] L. 1965, Ch. 110, § 2, codified at K.S.A. 12-1911 (repealed).
[14] Id.
[15] See L. 1974, Ch. 64, § 1.
[16]Board of Education of U.S.D. 512 v. Vic Regnier Builders, Inc.,231 Kan. 731, 736 (1982).
[17] See K.S.A. 12-1924; 12-1925; K.S.A. 1998 Supp. 12-1926.
[18] K.S.A. 12-1925.
[19] K.S.A. 12-1925(c).
[20] K.S.A. 12-1924. See also K.S.A. 12-1925.
[21] George v. Capital South Mortgage Investments, Inc., 265 Kan. 431,446 (1998) (internal quotation marks and citations omitted).
[22] K.S.A. 12-1922.
[23] Attorney General Opinion No. 92-69.
[24] Id. See also K.S.A. 1998 Supp. 12-1927.
[25] Citizens' Utility Ratepayer Board, 264 Kan. at 391.
[26] K.S.A. 12-1923.
[27] K.S.A. 12-1924.
[28] K.S.A. 1998 Supp. 12-1926(a).