No. 46,344

E. Conita Callaway, an individual, *et al.*, *Appellants*, v. City of Overland Park, Kansas, a municipal corporation, *Appellee*.

(508 P. 2d 902)

Opinion filed April 7, 1973.

*Kenton C. Granger*, of Granger and Nagels, Chartered, of Overland Park, argued the cause and was on the brief for the appellants.

*John L. Vratil,* of Bennett, Lytle & Wetzler, of Prairie Village, argued the cause, and *Robert F. Bennett,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: This is a declaratory judgment action attacking the validity of a city ordinance which imposes a tax or charge upon numerous business pursuits including the business of leasing rental properties in Overland Park, Kansas. The rental properties affected are apartments, duplexes and similar properties having a city zoning classification of R-2 and above.

The plaintiffs are individuals and firms who either own and lease or who lease rental properties for others of the nature described in the ordinance. They join in an effort to invalidate Section 34 of the ordinance on the basis of a statutory prohibition against the imposition of certain excise taxes by cities. In the alternative they seek to have Section 44 of the ordinance, which imposes criminal sanctions, declared void as being unconstitutionally vague and indefinite.

The city adopted Ordinance OT-601 on July 20, 1970. This date becomes important because the limiting statute then in effect determines the power of the city to enact such an. ordinance. The appellants do not question the procedural steps by which the ordinance was adopted. Section 1 of the ordinance provides:

"That no person, firm, or corporation, either as principal officer, agent, servant or employee, shall conduct, pursue, carry on, or operate in the City of Overland Park, Kansas, any business, trade, occupation, or profession, or render or furnish any service hereinafter specified, without first making application to the City Clerk for a license therefor and paying to the City Clerk the license tax hereinafter prescribed, and presenting the receipt of the City Clerk for the same to the City Clerk at the time said license is issued."

Sections 4 through 34 of the ordinance impose an annual tax on practically all retail, wholesale, manufacturing, sales, professional, banking, loan and service firms which operate in a large municipality. Section 34 refers to those in the business of leasing rental properties and reads as follows:

"Persons, firms, partnerships or corporations engaged in the business of owning and leasing or of leasing apartments, duplexes and all other rental properties with a zoning classification of R-2 and above, shall pay an Occupational Tax of .0035 dollars per square foot of each square foot of living space leased or subject to being leased, excepting the square footage occupied by either the apartment owner or resident manager, and the tax so determined

shall be rounded to the nearest half dollar. For the purposes of this section, living space is defined as all the living area within individual apartment units.

"If the rental property is offered for lease by a leasing agent of the owner, then the declaration hereinafter required shall be made and the tax paid by the leasing agent. If the rental property is offered for lease by the owner, then the declaration hereinafter required shall be made and the tax paid by the owner.

"The owner-lessor or the leasing agent of rental property shall make a declaration of square footage which must accompany the tax payment to the City Clerk's office each tax year. If square footage is not declared or is declared incorrectly, a fee of $10.00 per building will be charged the owner-lessor or the leasing agent to cover the additional administrative costs necessary to compute the correct tax. The tax on correct square footage will date back to the time of the initial declaration.

"In the event rental property is offered for lease for the first time after commencement of any tax year, the owner-lessor or the leasing agent shall, within 30 days thereafter, file the declaration and pay the tax hereinbefore described."

This case was first presented to the trial court on stipulated facts and the ordinance was held to be valid. The plaintiffs appeal.

The parties to this appeal agree with the trial court's holding that the ordinance was enacted by the city for revenue purposes and that any regulations imposed are those incidental to enforcing the revenue ordinance. They further agree that the ordinance was not enacted to limit, regulate or prohibit any business covered by the act.

The appellants challenge the power of the city to enact the ordinance. They rely primarily on the prohibition against city excise taxes contained in K. S. A. 1971 Supp. 79-4424 (*a*), which will be examined in some detail later. Appellants preface their contentions upon the statement that a city's power to levy taxes is limited. We agree with that general statement.

Prior to 1961 the source of a city's power to license or tax was based upon its police power and was limited to purposes of regulation. (See *Duff v. Garden City,* 122 Kan. 390, 251 Pac. 1091.) In other instances the power of a city to impose a tax was based upon specific legislative grant. (See Chapter 96, Laws of 1957 [G. S. 1957 Supp. 12-125 and 12-126], and *State, ex rel., v. City of Wichita,* 184 Kan. 196, 335 P. 2d 786.)

However, Article 12, Section 5 of the Constitution of the State of Kansas (home rule amendment) was adopted by vote of the people and became effective July 1, 1961. This changed our prior

conception of the power of a city to levy taxes, excises, fees or other exactions. Subsection ($b$) of the home rule amendment provides:

"Cities are hereby empowered to determine their local affairs and government including the levying of taxes, excises, fees, charges and other exactions except when and as the levying of any tax, excise, fee, charge or other exaction is limited or prohibited by enactment of the legislature applicable uniformly to all cities of the same class: . . ."

This section of our constitution contains other provisions not pertinent here except subsection ($d$) which reads:

"Powers and authority granted cities pursuant to this section shall be liberally construed for the purpose of giving to cities the largest measure of self-government."

Referring again to the quoted portion of subsection ($b$) it becomes apparent the Constitution of the State of Kansas empowers a city to impose or levy a business or occupation tax by revenue ordinance for the purpose of raising revenue except where such tax has been limited or prohibited by enactment of the legislature applicable uniformly to all cities of the same class. Absent limiting legislative enactments Ordinance OT-601 of the City of Overland Park appears to be within the general constitutional power granted to cities. However, there were various limiting legislative enactments adopted in 1961 which specifically referred to the "home rule amendment".

K. S. A. 12-137 and 12-138 provided for procedures for the exercise of constitutional home rule powers of taxation.

K. S. A. 12-139 provided:

"No city shall impose an excise tax, or tax in the nature of an excise, upon a sale or transfer of personal or real property, or the use thereof, or the rendering or furnishing of a service."

K. S. A. 12-140 provided:

"No city shall have power to levy and collect taxes on incomes from whatever source derived."

K. S. A. 12-141 provided:

"Nothing contained in this act shall prohibit or be construed as prohibiting any city ($a$) [not pertinent] ($b$) nor from imposing license fees for the privilege of engaging in any business, trade, occupation or profession or rendering or furnishing any service, but the determination of any such license fee shall not be based on any amount the licensee has received from the sale or transfer of personal or real property, or for the rendering or furnishing of a service, or on the income of the licensee: . . ."

K. S. A. 12-142 prohibited cities from imposing sales or excise taxes on certain named products, including cigarettes, cereal malt beverages and malt products.

In April, 1970, before the present ordinance became effective the legislature enacted what is commonly referred to as "the tax lid law", K. S. A. 1971 Supp. 79-4401, *et seq.*, and suspended the provisions of K. S. A. 12-139, 12-140 and 12-142. In lieu of the suspended provisions the legislature enacted K. S. A. 1971 Supp. 79-4424, 79-4425 and 79-4426 relating to local sales taxes, and 79-4427 and 79-4428 relating to local income or earnings taxes.

The appellants contend the present city ordinance was adopted in violation of the restrictions imposed by K. S. A. 1971 Supp. 79-4424 (*a*), which reads:

"No city shall impose an excise tax or tax in the nature of an excise, upon a sale or transfer of personal or real property, or the use thereof, or the rendering of a service without the governing body of such city having first submitted such proposition to and having received the approval of a majority of the electors voting thereon at any election authorized for such city by K. S. A. 1970 Supp. 79-4409, as amended, and the only such tax which may be enacted by a city is a retailers' sales tax which conforms to the requirements of this act."

It should be noted that the parties agree Ordinance OT-601 was not submitted to the electors for their approval, was not a retailers' sales tax and if the general prohibition in the statute as to excise taxes covers the tax imposed by the ordinance it should be held invalid. Accordingly we are faced with the question—what is the meaning and purpose of the quoted portion of 79-4424? The question requires a determination of the legislative intent.

In determining legislative intent it is the duty of a court to construe all provisions of statutes in *pari materia* with a view of reconciling and bringing them into workable harmony, if reasonably possible to do so. (*Smith v. Kansas Turnpike Authority*, 183 Kan. 158, 325 P. 2d 63; *City of Overland Park v. Nikias*, 209 Kan. 643, 498 P. 2d 56.) The primary rule for the construction of a statute is to find the legislative intent as expressed and the court is not warranted in looking beyond the plain terms of the act when it appears plain and unambiguous. (*Hunter v. Haun*, 210 Kan. 11, 49 P. 2d 1087.) The historical background and changes made in a statute are to be considered by the court in determining legislative intent for the purpose of statutory construction. (*Curless v. Board of County Commissioners*, 197 Kan. 580, 419 P. 2d 876.)

It appears the wording in 79-4424 (*a*) relating to city excise taxes and that in K. S. A. 12-139 is identical. When 12-139 was suspended by 79-4414 of the tax lid law the prior limitation on city excise taxes was readopted in 79-4424 (*a*). The balance of the statute sets forth

a procedure for a city or county to impose a retailers' sales tax which previously had been considered to be within the prohibition stated in K. S. A. 12-139.

The provision in 79-4424 (*a*) with which we are presently concerned states:

"No city shall impose an excise tax or tax in the nature of an excise, upon a sale or transfer of personal or real property, or the use thereof, or the rendering of a service . . ."

The term "excise tax" has come to mean and include practically any tax which is not an *ad valorem* tax. An *ad valorem* tax is a tax imposed on the basis of the value of the article or thing taxed. An excise tax is a tax imposed on the performance of an act, the engaging in an occupation or the enjoyment of a privilege. (See 15A Words and Phrases, p. 150.) In our own cases the term "excise tax" has been used in referring to occupation taxes (*Produce Co. v. City of Wichita,* 112 Kan. 28, 209 Pac. 667), franchise or privilege taxes (*Pacific Mutual Life Ins. Co. v. Hobbs,* 152 Kan. 230, 103 P. 2d 854) and license fees (*Duff v. Garden City,* supra). As pointed out in *Duff v. Garden City,* supra, p. 393, the particular term used in naming a governmental tax exaction is not controlling in determining the legislative purpose because "excise tax" is but a general term covering the entire field. Therefore it would appear the limitation intended cannot be discerned from the use by the legislature of the term "excise tax or tax in the nature of an excise".

The more specific portion of the descriptive phrase used by the legislature to evidence its intention with regard to the limitation imposed is—". . . upon a sale or transfer of personal or real property, or the use thereof, or the rendering of a service. . . ." The tax imposed by the Overland Park ordinance is upon engaging in a particular business, in this case leasing rental properties. The tax imposed, .0035 dollars per square foot of living space subject to being rented or leased, is an annual governmental exaction. It is not due on a transactional basis for it is paid only once a year whether the properties are rented or vacant and whether the same property is rented one or more times during a year.

In determining the legislative intent if we consider the historical background of the present limiting statute we should consider the construction placed by this court on the antecedent statutes K. S. A. 12-139 and 12-141. K. S. A. 12-141 provides that nothing in the act should prohibit a city from imposing license fees for

the privilege of engaging in occupations, but the determination of the amount of the license fee in such case should not be based on amounts received from sales or transfers of personal or real property, or from furnishing a service, or from a licensee's income. The "act" referred to in K. S. A. 12-141 is that found in Chapters 78 and 79 of the Kansas Session Laws of 1961, and the act included K. S. A. 12-137, 12-138, 12-139, 12-140 and 12-141. This section (K. S. A. 12-141) sets forth a legislative construction of K. S. A. 12-139. It does not apply to the 1970 act appearing as 79-4424 *supra.* K. S. A. 12-139 and 12-141 can only be considered for purposes of historical background.

In 1964 this court considered those limitations on city excise taxes in the 1961 act in the case of *Hampton v. City of Wichita,* 192 Kan. 534, 389 P. 2d 757. This court held an occupational tax imposed by the City of Wichita to be valid. The Wichita ordinance was passed as a revenue measure. The tax was imposed on an annual basis. Mr. Hampton operated a hay and feed business which required considerable space for inventory. The amount of the occupational tax was based on a formula which took into account not only the number of employees and front footage but also the number of square feet of floor space used in the business. In upholding the authority of the City of Wichita to impose such an occupation tax under the "home rule amendment", this court considered the effect of K. S. A. 12-139 through 12-141 and said:

". . . The ordinance creates no property tax nor attempts to impose a tax on the sale or transfer of real or personal property or the use thereof, nor does the ordinance make the tax a charge upon any specific property; it is solely an occupational tax on the business conducted." (*Hampton v. City of Wichita,* supra, p. 536.)

In *Williams v. Board of Education,* 198 Kan. 115, 422 P. 2d 874, one of the well recognized rules of statutory construction was stated in these words:

"Ordinarily, identical words or terms used in different statutes on a specific subject are interpreted to have the same meaning in the absence of anything in the context to indicate that a different meaning was intended. . . ." (p. 124.)

We believe the rule is applicable here and we should construe the words in 79-4424 (*a*) to have the same meaning previously given to them in *Hampton v. City of Wichita,* supra.

We believe the provisions of K. S. A. 1971 Supp. 79-4424 (*a*)

do not prohibit a city from imposing an occupational tax for revenue purposes.

The appellants concede that an occupational tax such as that imposed in *Hampton* may be proper under the "tax lid" counterparts of K. S. A. 12-139 through 12-141 but they attempt to distinguish *Hampton.* They contend that when a tax is measured by the square footage of living area to be rented and is imposed upon the business of owning and leasing or leasing living quarters the tax is impermissible. They contend such a tax becomes a tax on the property or the inventory of the business. It should be noted that the tax is not imposed on the basis of the value of the living area rented. Neither is it imposed on a transactional basis. The use of square footage of living area rented is merely a means of measuring the amount of the occupational tax to be collected annually. Ordinarily if imposition of a tax is authorized and legally permissible the method by which the amount of tax is measured is left to the discretion of the taxing authority.

In upholding a license tax imposed by the City of Oswego upon merchants, manufacturers, and bankers, this court in *In re Martin,* 62 Kan. 638, 64 Pac. 43, stated:

"License-taxes, whether for the purpose of regulation or revenue, or both, may be legally imposed, and the amount, as well as the method of imposing such taxes, is left to legislative discretion and judgment." (Syl. ¶ 1.)

Other Kansas cases, though appearing to involve regulatory rather than revenue ordinances, have approved a tax measured by the number of vehicles used in the business (*Produce Co. v. City of Wichita,* supra) and the number of cows used in the milk business (*City of Lawrence v. Kagi,* 105 Kan. 520, 185 Pac. 60).

In the *Produce Co.* case, supra, this court said:

"In determining the amount of a business or occupation tax, the city may use property as a measure, without imposing a tax on the property itself. (*City of Newton v. Atchison,* 31 Kan. 151, 1 Pac. 288.) Thus a tax on the business of selling may be measured by the gross amount of sales, and not be a tax on the property sold. Illustrations may be found in 17 R. C. L. at page 511, and a case note in 12 L. R. A., n. s., at page 568, gives instances of license taxes graded according to the number of animals or vehicles employed in the business. The principle is the same as that which enables us to estimate the impecuniosity of a man by the number of worthless dogs he keeps. . . ." (112 Kan. p. 29.)

Later in the opinion it is pointed out:

"The principle is the same whether the tax be levied for purpose of regulation or for revenue. In this instance the truck tonnage used in or incidental

to a business was made the standard by which to compute the contribution which the business ought to make. The standard is reasonably indicative of nature and quantity of business, which is an approved basis for computation of license taxes, and the tax is not a motor-vehicle tax." (112 Kan. p. 30.)

In determining the amount of a business or occupation tax, the city may use square footage of property as a measure without imposing a tax on the property itself for when the tax is one that may be legally imposed the measurement of the tax and method of imposing the same are left to the discretion and good judgment of the body exercising the power to tax.

Appellants in their brief next concede that an occupational tax based on the square footage of the apartment manager's office would be proper, but they earnestly contend where the measure of the tax is tied to the size of the product of the person's trade and where the product is real estate the tax becomes a tax on the use of real property in violation of 79-4424 (*a*) *supra*. We cannot agree.

In *Hampton v. City of Wichita*, supra, the measure of the tax was tied in part to the square footage of floor space used in the hay and feed business which indirectly is tied to the size of the products handled. Yet this court held the tax was not one imposed upon the use of the business property. There as here the tax is imposed on an annual basis for engaging in a business and not on a transactional basis as prohibited in 79-4424 (*a*) *supra*. Square footage of living area is used only to measure the amount of the occupation tax. There can be little question that the present tax is neither an *ad valorem* tax nor a sales, use or earnings tax.

In *Englewood v. Wright*, 147 Colo. 537, 364 P. 2d 569, 93 A. L. R. 2d 1129, an ordinance passed by a city under the power of home rule was considered by the Colorado court. The ordinance imposed an occupational tax upon the business of renting residential property and measured the annual tax on residential rental units at $3.00 per unit per year. The amount of tax considered in *Englewood* is quite comparable to the tax imposed in our present case. In our case the tax would amount to $3.50 per year on a rental apartment containing 1,000 square feet of living area. ($.0035 × 1,000=$3.50.) The Colorado court came to the same conclusion that we do. The renting and management of residential property is a business and as such may be subjected by revenue ordinance to an occupation tax. The fact that a business necessarily involves realty does not change the nature of a tax from an occupa-

tional tax on a business to a tax on the ownership or use of real property.

Appellants next contend that if we hold the tax is not one on ownership or use because the burden of the tax falls upon the leasing agent, then it is a tax on the act of leasing and is on the furnishing of a service. Again we do not agree for as previously pointed out the tax is not imposed on a transactional basis and is imposed on an annual basis for the privilege of engaging in the occupation. We believe the leasing and management of rental properties is quite generally recognized as a business or occupation. An annotation supporting this conclusion appears in 93 A. L. R. 2d 1136, and the general subject with which we are concerned is there explored in some depth.

We are, however, of the opinion that the limitation upon the home rule power of a city to impose excise taxes (K. S. A. 1971 Supp. 79-4424) prohibits a city from imposing such taxes upon a transactional basis, i. e. upon each sale, transfer or use of personal or real property or upon each rendition of service by a licensee or taxpayer. Under the statutes previously in effect when *Hampton* was decided, we held that cities were not prohibited from imposing a similar occupational tax and we now discern no change in legislative intention by reason of the adoption of 79-4424 (a) and the suspension of the former statutes.

An annual city tax of .0035 dollars per square foot of living area leased or subject to being leased imposed on those in the business of renting or leasing residential property is not a tax upon a sale or transfer of real property, or the use thereof, or the rendering of a service as restricted by K. S. A. 1971 Supp. 79-4424 (a).

The final attack of appellants on the ordinance is a constitutional argument that the criminal sanctions in the ordinance are unconstitutionally vague.

A statute imposing criminal sanctions which either forbids or requires the doing of an act in terms so vague that men of common intelligence must guess at its meaning and differ as to its application, lacks the first essential of due process, but if the language conveys a sufficient definite warning as to the proscribed conduct when measured by common understanding and practice, it is not void for vagueness. (*State v. Hill,* 189 Kan. 403. 369 P. 2d 365, 91 A. L. R. 2d 750; *State v. Gunzelman,* 210 Kan. 481, 502 P. 2d 705.)

Section 44 of Ordinance OT-601 provides that any person or firm who engages in an occupation or business to be licensed under

the ordinance without first paying the tax is guilty of a misdemeanor and on conviction shall be subject to a fine for each day the violation continues.

The appellants contend that the term "living space" on which the amount of the tax is to be computed is impermissibly vague. They insist that even though living space is further defined in the act as all the "living area within individual apartment units" the amount to be paid is too vague and indefinite and will depend upon the subjective judgment of the individual computing the tax. It would appear to us that men of common intelligence would have little difficulty in excluding from the "living area within individual apartment units" such places used as common storage areas, laundry areas, outside hallways, staircases, balconies and patios, as well as basements not commonly considered to be within the living area of individual apartment units. We understand that all appellants have computed and paid the tax and no question is presented here concerning any shortage in those payments.

Section 34 of the ordinance provides for a charge of $10 per building to cover administrative costs necessary to compute the tax in event the square footage is not declared or is declared incorrectly. Construing these two provisions together we would consider Section 44 of the ordinance as applying criminal sanctions only in event of failure or refusal to comply with the act as distinguished from erroneous calculation of the tax.

We do not find the provisions of the ordinance which impose criminal sanctions unconstitutionally vague.

Accordingly we hold that Ordinance OT-601 of the City of Overland Park imposes an occupational tax, that imposition of such tax is within the home rule powers of said city and that said municipal tax is not prohibited by the legislature in K. S. A. 1971 Supp. 79-4424.

The judgment is affirmed.