No. 111,521

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

HEARTLAND APARTMENT ASSOCIATION, INC., *et al.*,
*Appellants/Cross-appellees*,

v.

CITY OF MISSION, KANSAS,
*Appellee/Cross-appellant.*

SYLLABUS THE COURT

1.

The distinction between a fee and a tax does not depend upon its label, but rather on the nature and function of the charge. A tax is a forced contribution to raise revenue for the maintenance of governmental services offered to the general public. In contrast, a fee is paid in exchange for a special service, benefit, or privilege not automatically conferred upon the general public. A fee is not a revenue measure, but a means of compensating the government for the cost of offering and regulating the special service, benefit, or privilege. Payment of a fee is voluntary—an individual can avoid the charge by choosing not to take advantage of the service, benefit, or privilege offered.

2.

The Home Rule Amendment of the Kansas Constitution grants cities the power to determine their local affairs and government through the levying of taxes, excises, fees, charges, and other exactions.

1

3.

The powers and authority granted to cities under the Home Rule Amendment shall be liberally construed for the purpose of giving to cities the largest measure of self-government.

4.

When courts examine the legality of an ordinance created by an exercise of home rule authority, the ordinance is entitled to a presumption of validity and should not be stricken unless its infringement upon a statute is clear beyond substantial doubt.

5.

The legislature, by enacting tax laws that apply uniformly, can preempt cities and counties from enacting and enforcing certain taxes such as excise taxes.

6.

Under K.S.A. 12-194, cities cannot levy or impose an excise tax or a tax in the nature of an excise tax.

7.

When the legislature revises an existing law, the court presumes that the legislature intended to change the law as it existed prior to the amendment.

8.

Courts generally presume that the legislature acts with full knowledge of existing law.

Appeal from Johnson District Court; JAMES F. VANO, judge. Opinion filed July 2, 2015. Reversed and remanded.

*Mary Jo Shaney*, *James C. Bowers, Jr.*, and *Daniel P. Goldberg,* of White Goss, a Professional Corporation, of Kansas City, Missouri, for appellants/cross-appellees.

*Thomas V. Murray*, and *Mark A. Samsel*, of Lathrop & Gage LLP, of Overland Park, for appellee/cross-appellant.

*Athena E. Andaya*, deputy attorney general, for amicus curiae Office of Kansas Attorney General.

*John A. Donley*, of Devine and Donley, LLC, of Topeka, for amicus curiae National Federal of Independent Business Small Business Legal Center.

*Lucas Bell*, for amicus curiae Kansas Association of Realtors.

Before MALONE, C.J., HILL and BUSER, JJ.

HILL, J.:   In this era, when all cities and towns thirst for revenue to provide basic governmental services, we must decide if a transportation user fee, enacted by the City of Mission, is a tax, and if so, decide if it is an excise tax not permitted by the Kansas Legislature. We offer our perspective on the two issues that arise in this litigation.

*Is this a tax?*

Annually, Mission, Kansas collects a transportation user fee on all improved real estate, using it for public street maintenance. If an owner fails to pay, the city imposes late fees, interest, and attaches a lien on the real estate. Under Kansas law, a tax is a forced contribution to raise revenues for the maintenance of governmental services offered to the general public. Because this fee is a forced payment by all improved land-

3

owners which is used for the governmental service of providing for public streets and bridges, used by all, we hold Mission's transportation user fee is a tax.

*Is this an excise tax barred by law?*

The Kansas Legislature has prohibited cities from imposing all excise taxes with five exceptions. The term excise tax has come to mean and include practically any tax which is not an ad valorem tax imposed on the value of the article or thing taxed. The parties to this lawsuit agree that the fee here is not based on the value of the article or thing taxed and none of the five exceptions to the statutory ban on excise taxes apply to this case. Therefore, we hold that Mission's transportation user fee is a prohibited excise tax.

*The case history provides the context for our decision.*

Because the City Council decided that it lacked sufficient general fund revenues needed for the adequate maintenance of city streets, the City of Mission, in 2010, created a transportation user fee in Ordinance No. 1332 to raise revenue for its transportation fund. The ordinance is found in Chapter 145 of Mission's municipal code. The City uses the money from the fund for various transportation system needs such as surfacing and resurfacing of streets, curb and gutter repair, bridge repair, trail maintenance, and bicycle lane repair and maintenance.

The City imposed the fee on the owners of all developed property within the City. The council based the fee on what it calls the direct and indirect use of the City's transportation system. The fee exacts payment for what the City perceives to be the benefits that developed properties derive from the use of public streets, bicycle lanes, and sidewalks. According to the fee's administration manual, the fee is calculated by estimating the average number of vehicle trips each property within the City generates

4

and then assessing a fee based on the trip intensity—that is, the type and size of the use. In other words, the more trips generated by a certain property, the higher the fee assessment. Only real property exempt from all property or ad valorem taxes under K.S.A. 79-201, such as churches, are exempt from paying the fee. Heartland Apartment Association, Inc., the Building Owners Association, and others, cannot opt out of this fee.

*The City looks at three factors to determine how much to tax.*

To calculate the amount owed to the City, the City Administrator looks at three factors:
(1) the use of the developed property, including the amount of traffic generated by the property;
(2) for nonresidential uses, the developed square footage of the property; and
(3) a traffic generation factor for each use category of the developed property.

After determining the use category for the property, the Administrator uses a trip generation manual published by the Institute of Transportation Administrators to determine the corresponding vehicle trip generation figures. The Administrator then estimates the number of trips annually related to the property. After that, the Administrator assigns this estimate of annual trips to a customer group. There are three groups: (1) single-family resident; (2) multi-family resident; or (3) nonresidential use.

The fee is then billed to each landowner and collected with the annual Johnson County ad valorem property taxes. Under the enactment, the City can charge late fees for unpaid amounts and place a lien on the real estate for any unpaid amounts. In 2010 and 2011, the various plaintiffs paid their yearly fee assessments in amounts ranging from a flat fee of $72 for single-family homes to $16,159.87 for commercial property.

5

*Two landowner associations and others take legal action against the fee.*

Heartland Apartment Association, Inc., a nonprofit association whose members own or operate multi-family retail housing in Kansas, the Building Owners and Managers Association of Metropolitan Kansas City, a nonprofit association of commercial building owners and managers, and some individuals, filed a lawsuit challenging the legality of the City's transportation utility fee. They brought their suit in five counts: declaratory judgment, injunction, recovery of amounts paid, due process, and equal protection. The district court decided the matter on motions for summary judgment.

The court entered judgment in favor of the City on all five counts. Basically, it concluded that while the transportation user fee is a tax that was lawfully adopted through an ordinary ordinance under the City's powers of home rule found in Article 12, § 5 of the Kansas Constitution, it is not an excise tax prohibited under K.S.A. 12-194.

Heartland appeals, contending the fee is an illegal excise tax. The City cross-appeals the district court's ruling that the fee is a tax. The City maintains it is just a fee. The parties agree that there are no material facts in dispute for resolution of this issue.

When there is no factual dispute, such as this case, our review of an order regarding summary judgment is de novo. *David v. Hett*, 293 Kan. 679, 682, 270 P.3d 1102 (2011). And because the dispositive questions for this issue are purely legal—involving the relationship between the Kansas Constitution, Kan. Const. art. 12, § 5(b), a statute, K.S.A. 12-194, and Mission City Ordinance No. 1332—our review is unlimited. See *Jeanes v. Bank of America*, 296 Kan. 870, 873, 295 P.3d 1045 (2013).

Logic compels us to look first to see if this enactment is a tax as the district court held. For if it is not, then it cannot be an illegal excise tax since it is not a tax, but a fee. If

we agree with the court that it is a tax, we will then move on to the question of whether it is an excise tax—a tax the legislature has prohibited cities in Kansas from enacting.

*Cases from other jurisdictions.*

When the district court decided this fee was a tax, it considered cases from Washington, Florida, Idaho, and Colorado that have examined similar schemes in those states. *Covell v. City of Seattle*, 127 Wash. 2d 874, 879, 905 P.2d 324 (1995), *State v. City of Port Orange*, 650 So. 2d 1, 3 (Fla. 1994), and *Brewster v. City of Pocatello*, 115 Idaho 502, 504, 768 P.2d 765 (1988), held the fees to be illegal taxes. But *Bloom v. City of Fort Collins*, 784 P.2d 304, 307 (Colo. 1989), upheld the ordinance as a valid fee.

In *Covell*, Seattle passed an ordinance charging a fixed monthly street utility charge for single-family residences and multiple-family residences, to be included on the annual property tax assessment. In Washington, municipalities must have either express constitutional or legislative authority to levy taxes. *King County v. City of Algona*, 101 Wash. 2d 789, 791, 681 P.2d 1281 (1984). The Washington Supreme Court in *Covell* addressed the question whether the residential street utility charge was a regulatory fee or an unconstitutional ad valorem tax. 127 Wash. 2d at 877-78. In deciding whether a charge is a tax or regulatory fee, Washington courts examine, *inter alia*, whether the primary purpose is to raise revenue or to regulate. To paraphrase, if the primary purpose of the charges are to raise revenues and not to regulate, then the charges are a tax. See 127 Wash. 2d at 879.

The Washington Supreme Court held that the street utility charge was an unconstitutional tax. 127 Wash. 2d at 891. The court determined that the thrust of the ordinance was clearly to raise funding for the nonregulatory function of repairing streets for the public's benefit, including those nonresidents who use Seattle's streets without paying the charge, which it accomplished by transferring part of the responsibility for

7

maintaining and constructing city streets to a limited segment of the population. The court also found that the street utility charge was not a fee because it did not attempt to regulate residential housing or the use of city streets, and there was only a tangential relationship at most between the charge and the benefits received by those that pay. 127 Wash. 2d at 881-90.

In *Port Orange*, the Supreme Court of Florida determined whether a transportation utility fee enacted on property owners to finance bonds for the support of the operation, maintenance, and improvement of the local roads was a fee or a tax. 650 So. 2d at 2. The ordinance required Port Orange to estimate the amount of usage of the local roads by the owners and occupiers of developed properties through actual traffic counts and the use of a "Trip Generation Manual" developed by the Institute of Traffic Engineers. Port Orange then allocated costs in proportion to the number of trips generated by each user for each class of road. 650 So. 2d at 2. In Florida, "Because a tax must be authorized by general law . . . if the transportation utility fee is a tax, even broad home rule powers granted to municipalities do not authorize it." 650 So. 2d at 3.

The Supreme Court of Florida first clarified the definition of a tax as "an enforced burden imposed by sovereign right for the support of the government, the administration of law, and the exercise of various functions the sovereign is called on to perform." *Port Orange*, 650 So. 2d at 3. To contrast fees, the court cited *National Cable Television Assn. v. United States*, 415 U.S. 336, 341, 94 S. Ct. 1146, 39 L. Ed. 2d 370 (1974). The court noted that fees have common traits that distinguish them from taxes by who benefits from the public services, if they are voluntary, and who pays:

> "[Fees] are charged in exchange for a particular governmental service which
> benefits the party paying the fee in a manner not shared by other members of society
> [citation omitted]; and they are paid by choice, in that the party paying the fee has the

8

option of not utilizing the governmental service and thereby avoiding the charge." *Port Orange*, 650 So. 2d at 3.

The Supreme Court of Florida held that the ordinance Port Orange enacted was a tax because funding for the maintenance and improvement of a municipal road system is revenue used for the exercise of a sovereign function, and, unlike a valid user fee, a transportation utility fee "is a mandatory charge imposed upon those whose only choice is owning developed property within the boundaries of the municipality." *Port Orange*, 650 So. 2d at 4. The court characterized the transportation utility fee as converting the local roads and the municipality "into a toll road system" in which only the owners of developed property within the city are required to pay the tolls. 650 So. 2d at 4.

In *Pocatello*, the city imposed a "street restoration and maintenance fee" upon all owners and occupants of real property to pay for street maintenance. The amount owing by each owner or occupant was based upon the traffic generated by that owner's or occupant's property. The question before the Idaho court was whether, in the absence of legislative authority or voter approval, Pocatello could "impose a fee on the owners or occupants of property which abut public streets and which streets are open to public passage by the public in general." 115 Idaho at 503.

The Supreme Court of Idaho held that the fee imposed by Pocatello was in reality the imposition of a tax designed as a revenue raising measure, requiring the support of the electorate. Specifically, the court held the fee raised revenue and did not regulate any governmental service:

"[I]t is clear that the revenue to be collected from Pocatello's street fee has no necessary relationship to the regulation of travel over its streets, but rather is to generate funds for the non-regulatory function of repairing and maintaining streets. The maintenance and repair of streets is a non-regulatory function as the terms apply to the facts of the instant case. We view the essence of the charge at issue here as imposed on occupants or owners

9

of property for the privilege of having a public street abut their property. In that respect it is not dissimilar from a tax imposed for the privilege of owning property within the municipal limits of Pocatello. The privilege of having the usage of city streets which abuts one's property, is in no respect different from the privilege shared by the general public in the usage of public streets." *Pocatello*, 115 Idaho at 504.

Finally, in *Bloom*, a divided Colorado Supreme Court, relying on Colorado cases, held that an ordinance imposing a transportation utility fee on the owners or occupiers of developed lots or parcels of land fronting city streets was not a tax, but rather a valid special fee assessed to defray maintenance costs of city streets or the cost of a particular service provided to those assessed. 784 P.2d at 311. In doing so, the court clarified the distinction between a tax and a special fee by stating: "Unlike a tax, a special fee is not designed to raise revenues to defray the general expenses of government, but rather is a charge imposed upon persons or property for the purpose of defraying the cost of a particular governmental service." 784 P.2d at 308. The court also stated that "the transportation utility fee is not conditioned on the voluntary choice of owners or occupants of developed lots. We have never held . . . that a service fee must be voluntary." 784 P.2d at 310. A footnote further clarified that since Fort Collins had the authority in its legislative capacity to enact a special fee, "we decline to engraft a 'voluntariness' factor onto the tax-fee distinction in resolving this case." 784 P.2d at 311 n.8. Two justices dissented, finding that the ordinance was an involuntary tax. 784 P.2d at 312-14.

While the authorities from other jurisdictions, cited by both sides, are interesting because they deal with similar revenue collection schemes, also called transportation user fees, we find that they shed little light on this dispute. Each state is different and their systems of taxation are unique, especially in regard to the power a city has to tax. We must focus on Kansas law.

10

*Despite its name, this fee is a tax.*

We have been taught by the Supreme Court that the distinction between a fee and a tax does not depend upon its label, but rather on the nature and function of the charge. See *Executive Aircraft Consulting, Inc. v. City of Newton*, 252 Kan. 421, Syl. ¶ 7, 845 P.2d 57 (1993). In other words, even though a city may call the enactment a fee, it could still be a tax. Instead, we must look at the real effects of this ordinance.

- Who has to pay it?
- Does the city intend to raise revenues from this enactment or just seek compensation for the cost of offering a special service, benefit, or privilege to those who voluntarily seek the service, benefit, or privilege?
- Is the money to be used for the maintenance of a governmental service offered to the general public?

We agree with the district court when it looked at this fee and called it a tax. The bellwether case on this point is *Executive Aircraft*. The Supreme Court adopted definitions of the two terms—tax and fee, which are simple, straightforward, and cogent:

> "[A] tax is a forced contribution to raise revenue for the maintenance of governmental services offered to the general public. In contrast, a fee is paid in exchange for a special service, benefit, or privilege not automatically conferred upon the general public. A fee is not a revenue measure, but a means of compensating the government for the cost of offering and regulating the special service, benefit, or privilege. Payment of a fee is voluntary—an individual can avoid the charge by choosing not to take advantage of the service, benefit, or privilege offered." 252 Kan. at 427.

A careful reading of the two definitions reveal distinct contrasts between the two terms concerning who pays, what is collected, and what the money is used for.

11

If we follow the definitions set out in *Executive Aircraft* and answer some pertinent questions about the effects of the City of Mission's transportation user fee, we can reach a conclusion whether this enactment is a tax or a fee. All the answers lead us to conclude it is a tax.

First, who has to pay it? All owners of improved real estate have to pay this fee annually when they pay their ad valorem property taxes. This fee is city-wide in scope. Landowners cannot opt out of paying this fee for it is incident to their ownership of their property. Amongst owners of improved real estate, only those entities exempt from ad valorem property taxes are exempt from this fee. Failure to pay this fee could lead to a sheriff's sale of the property after the City's lien imposed for nonpayment is foreclosed. This is an involuntary contribution forced by law.

Second, the City states clearly that the purpose of this fee is to raise revenues to help pay for maintenance of its streets. Nothing in the record on appeal leads us to believe that any of the money collected from this fee is to pay for any special service or benefit offered by the City to any specific landowner or group of landowners. This fee is a revenue enhancement measure, not a payment for services. The money from this fee is used to augment the City's transportation fund.

Third, the money is to be used to maintain the City streets, curbs and guttering, bicycle paths, bridges, and countless other needs of a system of streets and roads that is open to the general public. Providing a way to get around in the city is one of the core governmental services that a city provides, such as police and fire protection. This money is for the common good, not just for the specific good of the landowner paying it. The motoring, bicycling, and walking public, whether or not they are residents of Mission, benefit from the maintenance provided by these funds.

With those answers, it is no great leap to conclude that this fee is a tax. To sum up, this fee is an annual forced contribution from all improved real estate owners that is used for the maintenance of a governmental service available to the general public.

Our Supreme Court has repeatedly acknowledged the distinction between taxes and fees as defined in *Executive Aircraft*. In *Rockers v. Kansas Turnpike Authority*, 268 Kan. 110, 116, 991 P.2d 889 (1999), the court cited the definition in *Executive Aircraft* in finding that the tolls collected by the Kansas Turnpike Authority are not taxes, but fees for the privilege of using the turnpike which are designed to defray the cost of providing the service. Then, in *Citizens' Utility Ratepayer Bd. v. Kansas Corporation Comm'n*, 264 Kan. 363, 399, 956 P.2d 685 (1998), the court relied on the definition in *Executive Aircraft* in finding that a surcharge was not a tax because its purpose was not to raise revenue.

We are not persuaded by the authorities cited by the City. First, the City cites *Home Builders Ass'n v. City of Overland Park*, 22 Kan. App. 2d 649, 664, 921 P.2d 234 (1996). The City basically questions the reliability of the definitions of tax and fee in *Executive Aircraft* when it states in its brief:  "'K.S.A. 12-194 formed no part of the *Executive Aircraft* court's ultimate holding,' and thus, is more akin to dicta to the extent it has any persuasive value." Yet, a close reading of *Home Builders*, 22 Kan. App. 2d at 670, reveals that the court relied upon the definitions of fee and tax we have used here when it quoted from *Executive Aircraft* in its opinion.

Next, the City argues the transportation user fee is akin to or has the characteristics of mandatory stormwater and sewer fees. It cites *Regency Park v. City of Topeka*, 267 Kan. 465, 471, 981 P.2d 256 (1999), as support. In *Regency Park*, the Kansas Supreme Court noted that mandatory charges for the handling and disposing of stormwater and sewage, which are both necessary to the health and welfare of citizens and property owners, "should not be characterized as a tax." 267 Kan. at 471-72.

13

Basically, *Regency Park* illustrates that a city in Kansas has the authority to charge a fee for the water and sewage services it directly provides to property owners. See K.S.A. 12-808, K.S.A. 12-3104. A stormwater fee "is paid for services actually furnished and necessary for the quiet enjoyment of the property rights of each plaintiff landowner." 267 Kan. at 472. The charge is unique to each tract served by the storm sewer. In contrast, the transportation user fee here is not specifically paid for the quiet enjoyment of the property rights of each developed property owner, but for the benefit of the general public. There is, at most, only a tangential relationship between the amount charged for the street maintenance of the streets abutting the developed property and the *property owner's* actual use of those city streets.

We also detect an inconsistency here by the City. A church in Mission is required to pay a stormwater utility fee. Yet, the City specifically relies on the tax-exempt status of churches under K.S.A. 79-201 to exempt churches from paying the transportation user fee. The City included this exemption for those properties exempt under K.S.A. 79-201 when settling a lawsuit initiated by the First Baptist Church of Mission and others seeking to enjoin the City from enforcing the fee because it is allegedly a property or ad valorem tax for which they are exempt. The City treated it as a tax when compromising with the churches but now maintains that it is a fee. It cannot be both.

Finally, the City argues that the definitions in *Executive Aircraft* are neither binding nor persuasive in the context of this case because the *Bloom* analysis of voluntariness in the context of a special fee is more persuasive than the description of a tax and fee in *Executive Aircraft.* In other words, the City is arguing we should disregard the accepted Kansas definition of a tax and fee and create a hybrid, *i.e.*, an involuntary fee. If this is an invitation to make new law, we decline.

In Colorado, a special fee is "a charge imposed on persons or property and reasonably designed to meet the overall cost of the service for which the fee is imposed."

14

*Bloom*, 784 P.2d at 310. In *Bloom*, the Colorado Supreme Court relied on a comparison of the transportation utility fee with a sewer service charge and storm drainage fee to find the transportation utility fee was a special fee not contingent on the voluntary choice of property owners. 784 P.2d at 310-11. Such a comparison on how Kansas views sewer service charges and storm drainage fees makes the Colorado test for a special fee unworkable.

In Kansas, "sewer charges by a municipality must be tied to the use of the services and the fee imposed, . . . is not a tax, but *a charge for services rendered*." (Emphasis added.) *Jennings v. Walsh*, 214 Kan. 398, 401, 521 P.2d 311 (1974). Further, a payment for the disposal of stormwater is a fee "paid for services actually furnished." *Regency Park*, 267 Kan. at 472.

In contrast, a sewer service charge and storm drainage fee in Colorado is not contingent upon services actually rendered or furnished to an individual, but can be reasonably set to defray the overall cost of the services to the public. *Bloom*, 784 P.2d at 310-11. Moreover, Colorado's requirement that a stormwater fee only be "reasonably designed" for the benefit of the public is at odds with the requirement in *Regency Park* that a stormwater fee paid in Kansas must be "*necessary* for the quiet enjoyment of the property rights of each plaintiff landowner." (Emphasis added.) *Regency Park*, 267 Kan. at 472.

*We review home rule authority.*

The City argued in its motion for summary judgment that this enactment was a special fee adopted under its home rule authority and not a tax or an excise tax. In its view, since this is not a tax, it cannot be a prohibited excise tax. A review of the home rule authority of Kansas cities is helpful at this point.

15

The Home Rule Amendment of the Kansas Constitution grants cities the power to determine their local affairs and government through "the levying of taxes, excises, fees, charges and other exactions." Kan. Const. art. 12, § 5(b). The powers and authority granted to cities under the Home Rule Amendment "shall be liberally construed for the purpose of giving to cities the largest measure of self-government." Kan. Const. art. 12, § 5(d). For that reason, when courts examine the legality of an ordinance created by an exercise of home rule authority, the ordinance is entitled to a presumption of validity and should not be stricken unless its infringement upon a statute is clear beyond substantial doubt. *Executive Aircraft*, 252 Kan. at 424.

Cities in Kansas have *two* methods to exercise their home rule authority. First, cities may enact ordinances of any type on subjects not addressed by the legislature. Kan. Const. art. 12, § 5(b). Second, cities may exempt themselves, in whole or in part, from a statute with statewide effect by employing a charter ordinance, which is subject to notice requirements and public challenge not applicable to ordinary ordinances. Kan. Const. art. 12, § 5(b), (c). See *Farha v. City of Wichita*, 284 Kan. 507, 513, 161 P.3d 717 (2007).

But there are limits to this opting-out process. Cities are prohibited from using an ordinary or a charter ordinance to exempt itself from four specific types of legislative acts:  (1) enactments of statewide concern which are *uniformly applicable* to all cities; (2) other legislative enactments *uniformly applicable* to all cities; (3) enactments *uniformly applicable* to all cities of the same class that limit or prohibit "the levying of any tax, excise, fee, charge or other exaction"; and (4) legislative enactments prescribing limits of indebtedness. (Emphasis added.) Kan. Const. art. 12, § 5(b); *Farha*, 284 Kan. at 514.

In Kansas, the legislature, by enacting tax laws that apply uniformly, can preempt cities and counties from enacting and enforcing certain taxes such as excise taxes. We move now to our analysis of whether this tax is an excise tax.

16

*Some fundamental legal points are at work here.*

Heartland argues that because this City ordinance imposes a tax, we must examine and construe K.S.A. 12-194 in its favor as a taxpayer. Indeed, in *Executive Aircraft*, the Kansas Supreme Court reiterated the principle that tax laws must be strictly construed because they are statutory and do not exist apart from the statute and "'[w]here there is reasonable doubt as to the meaning of a taxing act, it will be construed most favorably to the taxpayer.' [Citation omitted.]" 252 Kan. at 425.

Since we, like the Kansas Supreme Court in *Executive Aircraft*, are examining a statute within the context of the Home Rule Amendment, the City's ordinance is presumed to be valid unless its infringement upon the tax statute "is clear beyond substantial doubt." 252 Kan. 421, Syl. ¶ 2. In other words, if it is clear beyond a substantial doubt that the tax the City assesses though this ordinance conflicts with K.S.A. 12-194, the ordinance is an invalid exercise of its home rule power. See *Executive Aircraft*, 252 Kan. at 424-25.

*This is an excise tax.*

Under Kansas law, K.S.A. 12-194, cities cannot levy or impose an excise tax or a tax in the nature of an excise tax. The statutes neither do not define excise taxes nor the phrase "tax in the nature of an excise tax." We must now decide whether the City's transportation user fee is an excise tax or a tax in the nature of an excise tax prohibited by this statute. Heartland and the others argue it is. The City argues it is not. Obviously, this question requires a determination of legislative intent—what taxes did the legislature intend to prohibit by this law?

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Bergstrom v. Spears Manufacturing*

17

*Co.*, 289 Kan. 605, 607, 214 P.3d 676 (2009). When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. *In re Tax Appeal of Burch*, 296 Kan. 713, 722, 294 P.3d 1155 (2013).

We hold the legislature has enlarged what taxes are prohibited to such an extent that this tax can be no other tax than an excise tax and is thus prohibited by law. To make our reasoning clear on this point, we must examine how the statutes dealt with prohibiting municipal excise taxes before and after the amendments to the laws in 2006.

The former statute, K.S.A. 1971 Supp. 79-4424(a) is the predecessor to K.S.A. 12-194. That version of the law had some specific wording dealing with sales, and the use of property as well as services:

> "No city shall impose an excise tax or tax in the nature of an excise, *upon a sale or transfer or personal or real property, or the use thereof, or the rendering of a service . . . .*" (Emphasis added.) K.S.A. 1971 Supp. 79-4424(a).

The specific wording used in the statute was important. Two appellate cases illustrate our point. In *Callaway v. City of Overland Park*, 211 Kan. 646, 508 P.2d 902 (1973), the Kansas Supreme Court determined whether the City of Overland Park could impose an occupational use tax on certain rental properties. The court described the type of tax prohibited by K.S.A. 1971 Supp. 79-4424 as a tax imposed on a "transactional basis." 211 Kan. at 655. The *Callaway* court defined the prohibited tax on a transactional basis to be one "upon each sale, transfer or use of personal or real property or upon each rendition of service by a licensee or taxpayer." 211 Kan. at 655. In affirming the district court, *Callaway* concluded that the tax at issue in that case was not due on a transactional basis:

"The tax imposed by the Overland Park ordinance is upon engaging in a particular business, in this case leasing rental properties. The tax imposed, .0035 dollars per square foot of living space subject to being rented or leased, is an annual governmental exaction. It is not due on a transactional basis *for it is paid only once a year whether the properties are rented or vacant and whether the same property is rented one or more times during a year*." (Emphasis added.) 211 Kan. at 651.

Then, dealing with the newer manifestation of this prohibited tax, K.S.A. 12-194, a panel of this court in *Home Builders*, 22 Kan. App. 2d at 656, addressed whether K.S.A. 12-194 prohibited a tax levied on the business of platting real property. The City of Overland Park argued that the tax did not fall on the use of real property because it was not *tied to the type of activity* for which the property was being employed. The *Home Builders* panel agreed that the trial court erred in finding the tax was levied upon the use of real property. Our panel concluded that platting was not "integral to the 'use' of property, as that term is commonly understood, when a plat is *not tied to the . . . enjoyment of the land itself*." (Emphasis added.) 22 Kan. App. 2d at 658. Thus, our panel held the tax was not prohibited.

Both the *Callaway* and *Home Builders* courts permitted the questioned taxes because they were not taxing transactions. These interpretations were based on the working definitions adopted by the *Callaway* court for excise and ad valorem property taxes:

"The term 'excise tax' has come to mean and include practically any tax which is not an ad valorem tax. An ad valorem tax is a tax imposed on the basis of the value of the article or thing taxed. An excise tax is a tax imposed on *the performance of an act, the engaging in an occupation or the enjoyment of a privilege*." (Emphasis added.) *Callaway*, 211 Kan. at 651.

19

We note that the Kansas Supreme Court has subsequently stepped away from its general statement in *Callaway* that an excise tax includes "practically any tax which is not an ad valorem tax." In *Von Ruden v. Miller*, 231 Kan. 1, 8, 642 P.2d 91 (1982), the court noted that "[t]he Kansas intangibles tax fits neither the definition of an ad valorem tax nor an excise tax. However, the *Callaway* definition of an excise tax, "a tax imposed on the performance of an act, the engaging in an occupation or the enjoyment of a privilege" is well accepted. 211 Kan. at 651; see *Application of Kaul*, 261 Kan. 755, 757, 933 P.2d 717 (1997).

But, the law is seldom static. In 2006, the legislature enacted "[a]n Act concerning sales taxation; relating to retailers' sales tax, authority of cities; excise tax, limitations." L. 2006, ch. 204, sec. 3. As the title of the act suggests, the legislature again concerned itself with limitations on the home rule powers to enact excise taxes. Importantly, the legislature removed the language considered in *Callaway* and *Home Builders* regarding the sale or transfer of personal or real property, or the use thereof. Basically, the legislature subsequently struck the specific wording of the statute dealing with sales, use of property, and services found in K.S.A. 1971 Supp. 79-4424(a) and subsequently in K.S.A. 12-194 in 2006. L. 2006, ch. 204, sec. 3. The current version of K.S.A. 12-194 broadly prohibits excises taxes and uses no specific language:

> "(a) . . . no city or county shall levy or impose an excise tax or a tax in the nature of an excise, other than a retailers' sales tax and a compensating use tax, but the provisions of this section shall not be construed as prohibiting any city from [exceptions listed]. " K.S.A. 2014 Supp. 12-194.

Here, the legislature eliminated the specific provision of the statute that limited the prohibited taxes to those excise taxes imposed on a transactional basis. With this revision, the clear statutory language leaves the general language, "no city or county shall levy or

impose an excise tax or a tax in the nature of an excise" as the controlling provision of the law.

Simply put, the legislature removed all transactional bases as a way to decide if a tax is an excise tax prohibited by law. The ruling in *Callaway* on that point no longer controls. But the general observation found in *Callaway* does control now. "The term 'excise tax' has come to mean and include practically any tax which is not an ad valorem tax." 211 Kan. at 651. What was once permitted is now prohibited.

It is always significant when the legislature eliminates a specific ban and leaves a general prohibition in place. Two fundamental points must be made here. When the legislature revises an existing law, the court presumes that the legislature intended to change the law as it existed prior to the amendment. *Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs.*, 290 Kan. 446, 464, 228 P.3d 403 (2010). Courts generally presume that the legislature acts with full knowledge of existing law. *Cochran v. Kansas Dept. of* Agriculture, 291 Kan. 898, 906, 249 P.3d 434 (2011). Clearly, with these amendments, the legislature wanted to prohibit more taxes than before.

If we compare and contrast the differing language of the two versions of the statute, the prior version, as interpreted by the courts in *Callaway* and *Home Builders*, was *permissive* in that it directs that a city can impose any excise tax it wants except for those imposed on a transactional basis. However, by eliminating the specific provision of the statute concerning the necessity that the excise tax imposed must not be on a transactional basis and just leaving the general language as the controlling provision, the legislature  has turned the statute from a permissive statute into a *prohibitive* statute.

The legislature has unequivocally stated that a city or county is explicitly prohibited from levying or imposing "an excise tax or a tax in the nature of an excise" except for one of the enumerated exceptions. K.S.A. 12-194. We must read the statutes so

21

as to give effect to every part thereof. *State v. Campbell*, 279 Kan. 1, 5, 106 P.3d 1129 (2005).

No case has yet considered the 2006 amendments. It is certainly clear that the legislature's decision to remove the language regarding the sale or transfer of personal or real property, or the use thereof, greatly broadened the reach of the prohibiting statute. The statute now sets out a *general prohibition against excise taxes*, followed by five specified exclusions:

(1) A fixed charge upon gross receipts of a franchisee;

(2) an occupational tax (with some exceptions);

(3) an occupational tax already imposed prior to the effective date of the statute;

(4) any development excise tax levied before January 1, 2006;

(5) an excise tax on tickets for concerts, theatrical performances, and sporting events on city owned property. K.S.A. 2014 Supp. 12-194(a).

Neither side claims that the fee imposed by the City fits within any of these exceptions to the general prohibition in K.S.A. 12-194. Therefore, we must hold the transportation user fee enacted by the City of Mission is invalid because it is not a permitted excise tax.

Interestingly, this tax would have been prohibited under the older version of K.S.A. 12-194 as well, since it is based upon how landowners use their real estate. The transportation user fee in this case is not triggered by just ownership but is taxing the enjoyment of owning *developed* property. Black's Law Dictionary 609 (9th ed. 2009) defines "enjoyment" as "[p]ossession and use, esp. of rights of property" or "[t]he exercise of a right." In other words, how landowners elect to develop or use their developed property, whether for commercial, industrial, recreational, or residential use, triggers this tax.

This fee is clearly assessed, in part, on how property owners decide to use their property. Plainly, the property owners' decision directly affects the City's determination of the amount of the direct and indirect volume of traffic each property generates, the type and size of such traffic, and the traffic generation factor. The larger the developed square footage and the greater the use or disposition made of the developed property, the greater the tax. In sum, this tax taxes the use of developed property and would have been prohibited as an unauthorized transactional excise tax under the former law.

With the broader prohibition of excise taxes now in effect, it is clear beyond a substantial doubt the transportation user fee is an excise tax or a tax in the nature of an excise and the City exceeded its home rule authority. See Kan. Const. art. 12, § 5(b); K.S.A. 12-194; see *Executive Aircraft*, 252 Kan. at 424-25.

*Remaining issues*

Given our ruling here, we need not address Heartland's due process and equal protection arguments. The same is true for Heartland's argument raised after summary judgment was granted, that the City failed to properly follow the procedures in K.S.A. 12-137 for the enactment of Home Rule Ordinances, commonly called Charter Ordinances. Because new claims for relief are not properly raised in a motion to amend after judgment, the district court acted within its discretion in denying Heartland's motion on this issue. See *Wenrich v. Employers Mutual Ins. Companies*, 35 Kan. App. 2d 582, 590, 132 P.3d 970 (2006).

Going further on this point, Heartland's attempt to have us consider its K.S.A. 12-137 issue under one of the several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, is unconvincing. See *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008), *cert. denied* 555 U.S. 1178 (2009). Even though Heartland argues the question whether the City followed K.S.A. 12-

137 presents only a question of law that is finally determinative of this case, we will not address the issue because the record on appeal does not contain the uncontroverted facts necessary to resolve this issue. Heartland fails to point us to the "proved or admitted facts" necessary to make such a determination under this exception to the general rule. See *In re Estate of Broderick*, 286 Kan. at 1082.

We hold the transportation user fee enacted by the City of Mission is an excise tax banned by law and is therefore void.

Reversed and remanded.